Mario Colin **McCONNEY**,
Plaintiff–Appellee,

v.

The **CITY OF HOUSTON**, and Lee P. Brown, individually and in his official capacity as Chief of Police of the City of Houston, Defendants–Appellants.

No. 87–2704.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1989.

---

Richard L. Anderson, Larry Cohen, Barbara Toby Baruch, Asst. County Attys., Jerry E. Smith, County Atty., Houston, Tex., for defendants-appellants.

Mitchell A. Seider, Bruce V. Griffiths, Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, and GOLDBERG and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellee Mario Colin McConney (McConney) brought this suit against the City of Houston (the City) and the Houston Chief of Police, Lee P. Brown (Brown), for alleged violations of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. After trial, the jury awarded McConney $25,000 in compensatory damages and $1,000 in attorneys' fees against the City, and $100 in punitive damages against Brown. The district court entered judgment in accordance with this verdict except as to the attorneys' fees, which were reduced to $500. For the reasons that follow, we affirm the judgment against the City and reverse the judgment against Brown.

**Facts and Proceedings Below**

About 9:30 p.m. on January 11, 1983, Houston police officers found McConney in a rain-filled ditch in Houston. The temperature was "in the lower 40's," the ditch was about three feet deep, and McConney was lying in it on his back with the water "up at least to his ears." McConney was conscious, but his speech was slurred and he failed to respond to questioning. Thinking that perhaps he had been hit by a car, the officers summoned an ambulance. Soon after the ambulance arrived, a rescue squad arrived and removed McConney from the ditch using ropes and a firm stretcher.

After McConney was pulled from the ditch, the rescue squad and the paramedics examined his physical condition. During the examination, the paramedics questioned McConney concerning his identity, but he did not respond. Although McConney suffers from diabetes mellitus, he was not wearing a medical emergency alert bracelet at the time. One of the officers examined McConney's wallet in an attempt to find the name of a friend or relative, but he did not find any names, nor did he find anything in the wallet indicating that McConney was suffering from an ailment. However, McConney later testified that at the time of the rescue he was carrying a medical emergency card indicating his diabetic condition.

After the examination of McConney's physical condition, the paramedics told the officers that McConney was intoxicated with some unknown substance. Based on this diagnosis and McConney's physical reactions, the officers decided to arrest him for public intoxication.

The officers then took McConney to the city jail. During the ride, McConney remained slumped over in the car and never responded intelligibly to questions. Upon arrival, the officers began filling out some paperwork, and when one officer asked the other how they should complete the entry concerning the intoxication charge, McConney broke into the conversation and suggested "unknown substance." McConney testified that he was handcuffed at this time and that he told the officers about his medical emergency card, but there is no evidence he showed the card to the officers. He also testified that at some point, apparently when they arrived at the jail, he told the arresting officers he was having an insulin reaction. The officers took McConney to the jail medical clinic. They told the medical health assistant there that the paramedics had indicated that McConney might be under the influence of drugs. After examining McConney, the medical assistant agreed that he appeared to be under the influence of some drug. The arresting officers then turned McConney over to the jail officers.

McConney then informed the medical assistant that he was having an insulin reaction. The medical assistant gave McConney an oral dose of dextrose and performed a blood sugar test, which indicated that McConney's sugar level was low but within the normal range. The assistant then gave McConney a sandwich and more sugar. Though McConney did not immediately eat the sandwich, he claims that he then began to return to normal. McConney to this time had apparently never expressly denied being intoxicated. He testified "I didn't tell the medical personnel that I wasn't intoxicated."

McConney was then taken to the booking desk where he was officially charged with public intoxication. This occurred at about

10:21 p.m. McConney's booking record also contains the notation that he was arrested at 9:30, and the further notation "1:30." During his conversation with the booking officer, McConney testified that he told the officer "I am obviously not drunk now. Why can't you let me go?" McConney, who had $234 in his possession, tried to make bail, which was fixed at $110, while being booked, but the booking officer, McConney testified, denied his request, stating that "there is a rule that we can't release you for four hours." According to further testimony of McConney, the booking officer indicated in substance that he knew McConney was sober but stated that "there is a regulation now that prevents any ... uh, yes, he cited the warrant that anybody who has been arrested for public intoxication has to be held for four hours, whatever."

McConney was then taken to a holding cell where he was detained for thirty to forty-five minutes, and then to a regular cell where he remained about seven or eight hours. During the night McConney was told he could use the telephone but he apparently refused to do so. Before being released on bond about 6:30 a.m. the next morning, McConney also refused to give a blood or urine sample. He testified, however, that he did then receive an insulin injection. When he left the jail his speech was clear, his gait was steady, and he was alert and oriented as to person, place, and time. McConney testified that he had consumed no intoxicants, marihuana, "tablets or pills" on January 11 and was not intoxicated at any time on that date.

Some two months later, shortly before his misdemeanor public intoxication trial (or arraignment) was to begin, McConney produced documents showing that he was diabetic. Based on these documents, the prosecution dismissed the case before trial commenced. McConney then brought this damage suit against Brown and the City under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. He did not contend that his arrest for public intoxication was without probable cause (or was otherwise unlawful), and it was stipulated that the jail personnel who examined him had administered "appropriate medical treatment" to McConney. However, McConney's claim was in essence that his constitutional rights had been violated by his continued detention on a charge of public intoxication, pursuant to an alleged City four hour detention rule, even though he was not intoxicated. In its answers to seven special interrogatories, the jury found: (1) that "the City of Houston had a policy or established custom of detaining those arrested for public intoxication for at least four hours" (special interrogatory No. 1), (2) that McConney was "held in the City Jail and/or prosecuted for the offense of public intoxication without probable cause pursuant to such policy or custom" (special interrogatory No. 2), (3) that "the enforcement of the City's policy or custom" was a proximate cause of the constitutional violation of which McConney complained, (4) that Brown, as Chief of Police, enforced, participated in, or condoned the policy in violation of McConney's rights, and (5) that Brown acted wantonly, maliciously, deliberately, or with reckless disregard of those rights. The jury also found that McConney was entitled to $25,000 in compensatory damages and $1,000 in attorneys' fees as against the City, and $100 in punitive damages as against Brown. The district court entered final judgment in accordance with the jury's verdict, but subsequently amended the judgment to reduce the attorneys' fees to $500. This appeal followed.

## Discussion

 On appeal, McConney concedes that the judgment against Brown cannot stand because Brown is entitled to qualified immunity under *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). We agree. Moreover, there is no evidence that Brown had any personal involvement with the events respecting McConney. Nor is there sufficient evidence that he had any knowledge of or connection with the policy of which McConney complained. *See Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir.1987); *Vela v. White*, 703 F.2d 147, 153 (5th Cir.1983); *Reimer v. Smith*, 663 F.2d 1316, 1323–24 (5th Cir.1981). Accordingly, the judgment against Brown is reversed.

 The City contends that the district court erred in entering judgment against it on the jury's verdict because the policy that

was found to have been the proximate cause of McConney's deprivation was not unconstitutional.[1] McConney continues to argue that the City's four hour detention rule caused the deprivation of his constitutional rights because pursuant to it he was detained even after the officers had learned that he was not intoxicated.

■ A municipality may be liable under section 1983 only if a municipal policy caused the deprivation of a right protected by the Constitution or federal laws. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). As we stated in *Webster v. City of Houston,* 735 F.2d 838 (5th Cir.1984) (en banc), for this purpose a policy may be either a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's governing body (or by one or more officials to whom the governing body has delegated policy-making authority), or a persistent, widespread practice of city officials or employees that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official municipal policy.[2] Sufficiently numerous prior incidents of police misconduct, for example, may tend to prove a custom and accession to that custom by the municipality's policymakers. Isolated instances, on the other hand, are inadequate to prove knowledge and acquiescence by policymakers. *See Languirand v. Hayden,* 717 F.2d 220, 225

(5th Cir.1983); *Walters v. City of Ocean Springs,* 626 F.2d 1317, 1323 & n. 3 (5th Cir.1980). Moreover, where an official's discretionary decisions are constrained by policies not of that official's making, the official's departures from those policies are not considered acts of the municipality for section 1983 purposes. *See City of St. Louis v. Praprotnik,* — U.S. —, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988).

■ In the present case, the City contends that the post-arrest detention of those charged with public intoxication is not unconstitutional; thus, the City's four hour detention policy or established custom did not deprive McConney of his constitutional rights. In *Thompson v. Olson,* 798 F.2d 552 (1st Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987), the First Circuit, speaking through our distinguished colleague and former chief judge, recently addressed the common law false imprisonment implications of the continued detention of those lawfully arrested without a warrant for public intoxication. In that case, the court first observed that a police officer's initial finding of probable cause justifies not only arrest, but also a reasonable period of continued detention for the purpose of bringing the arrestee before a magistrate. *Id.* at 556 (citing *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 862–63, 43 L.Ed.2d 54 (1974)). However, the court noted that it did "not ... intimate that a police officer, upon an initial finding of probable cause, may close

---

1. In addition, the City contends that the district court erred in entering judgment based on the jury's affirmative answer to special interrogatory No. 2, which reads: "Do you find from a preponderance of the evidence that the Plaintiff, Mario McConney, was held in the City Jail and/or prosecuted for the offense of public intoxication without probable cause pursuant to such policy or custom?" The City contends that the interrogatory is flawed because its "and/or" wording would allow recovery based on a finding that McConney was merely prosecuted, and not detained, without probable cause. According to the City, McConney should be allowed to recover only if the jury found that he was detained *and* prosecuted without probable cause, since the "lawfulness of McConney's arrest prevents him as a matter of law from recovering ... on a § 1983 claim based on malicious prosecution." Whatever the merits of this argument, the City did not object to special interrogatory No. 2 at trial. A party who fails to object to the form of a special interrogatory cannot complain thereof for the first time on appeal, *J.C. Motor Lines, Inc. v. Trailways Bus System,* 689 F.2d

599, 603 (5th Cir.1982), except in cases where answers to interrogatories are in irreconcilable conflict. *See Brunner v. Maritime Overseas Corp.,* 779 F.2d 296, 297 (5th Cir.), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1971, 90 L.Ed.2d 655 (1986). Since the answers to the interrogatories in this case are not in irreconcilable conflict, we decline to allow the City to raise its objection for the first time on appeal.

2. *Id.* at 841. *See also Monell,* 98 S.Ct. at 2036 (a municipality may be liable for constitutional deprivations visited pursuant to a governmental custom even though such custom has not received formal approval through the municipality's official decisionmaking channels). However, actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. *See Webster,* 735 F.2d at 841. In a section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff. *City of St. Louis v. Praprotnik,* — U.S. —, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988).

his eyes to all subsequent developments." *Id.* *Thompson* goes on to state:

"[p]robable cause to arrest does not suspend an officer's continuing obligation to act 'reasonably.' On the other hand, having once determined that there is probable cause to arrest, an officer should not be required to reassess his probable cause conclusion at every turn, *whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation ....*" *Id.* (emphasis added).

The First Circuit thus found that the following standard, articulated in the *Restatement of Torts,* strikes the proper balance:

"[F]ollowing a legal warrantless arrest based on probable cause, *an affirmative duty to release arises only if the arresting officer ascertains beyond a reasonable doubt that the suspicion (probable cause) which forms the basis for the privilege to arrest is unfounded.* Restatement, Torts, 2d § 134, Comment f. If the arresting officer does not ascertain beyond reasonable doubt that his suspicions are unfounded, then, having once made a lawful arrest, he may avoid successful claims of false imprisonment by bringing the suspect promptly before a magistrate and by refraining from the use of excessive force." *Id.* (emphasis added).

We generally agree with the foregoing approach to this issue, being mindful, however, that here we are dealing with constitutional requirements, not common law torts as in the relevant portion of *Thompson.* We conclude that a person may constitutionally be detained for at least four or five hours following a lawful warrantless arrest for public intoxication without the responsible officers having any affirmative duty during that time to inquire further as to whether the person is intoxicated, even if requested to do so. However, once a responsible officer actually does ascertain beyond reasonable doubt that one who has been so arrested is in fact not intoxicated, the arrestee should be released.[3] This rule strikes the proper balance as it prevents the officer responsible from willfully continuing detention of one so arrested who the officer has now actually ascertained beyond reasonable doubt is not intoxicated, without requiring the officer to reassess the initial probable cause finding at every change in circumstances or protestation of the arrestee. We therefore find that a municipal policy that conforms to this rule is constitutional.

■ However, McConney has asserted that the City's policy is one that extends beyond the proper limits of the rule articulated above. According to McConney, the City's policy requires the four hour detention of those charged with public intoxication even if the officers ascertain after the arrest and well before expiration of the four hours that the person so charged is clearly not intoxicated. McConney alleged, and the jury in substance arguably found, that pursuant to the City's policy he was detained even after the appropriate officials had determined that he clearly was no longer intoxicated (and even after he had requested and been able to make bail, which was otherwise then available but for the four hour rule). A policy requiring continued detention and denial of otherwise available bail after determination beyond reasonable doubt that one held on a proper warrantless arrest for public intoxication is in fact not intoxicated and that probable cause no longer exists raises obvious constitutional concerns.[4]

The City argues: "In Special Interrogatory No. 1 the jury found that the City had a policy or established custom of detaining persons arrested for public intoxication for at least four hours.... This policy is reasonable and this Court should

---

**3.** This case does not present, and we do not rule on, the question of whether or under what circumstances release may be conditioned on bond in such a situation. Nor do we address when an arrestee should be brought to jail and/or formally charged and booked, or possible duties respecting an arrestee's serious medical needs. Further, we do not address arrest pursuant to warrant.

**4.** We do not suggest that such a detainee need be released forthwith upon ascertainment that he is clearly not intoxicated; reasonable time for administrative processing, return of property, making bail (if and where appropriate), etc., would be permissible.

hold that it is constitutional."[5] The difficulty with this argument is that under our approach such a policy *would* be unconstitutional *if* it required continued detention and denial of otherwise available bail *after*, and notwithstanding that, the authorities had, well within the four hours, *in fact* ascertained that the party properly arrested without a warrant for public intoxication was, beyond reasonable doubt, sober and not a danger to himself or others. Although the City does not clearly state an issue in respect to the insufficiency of the evidence to show such an unconstitutional aspect of the "four hour" policy, arguments scattered through this part of the City's brief suggest the contention that there is insufficient evidence that the City's four hour policy in fact had such a Draconian component. However, even if we assume that such an argument has been adequately raised on appeal, the City faces the further hurdle that the issue was never preserved below. The City did absolutely *nothing* in the trial court to preserve any question of the sufficiency of the evidence of its liability. It did not object either to the submission or to the form of any of the special interrogatories on the basis of which its liability was determined; it made no motion for directed verdict;[6] and it made no motion for judgment notwithstanding the verdict or for new trial in respect to its liability.[7]

■ Insofar as the City may be contending that special interrogatory No. 1 is not properly worded to state the applicable test, this argument is clearly waived because the City made no objection below to the form of the interrogatory or to the failure to submit any factual issue in this respect. Further, in those circumstances any omitted factual issues are deemed found by the trial court in support of the judgment under Fed.R.Civ.P. 49(a) (there being no express findings by the trial court). Of course, such trial court findings (deemed or express) may be set aside on appeal if they are clearly erroneous, *see Murtagh v. University Computing Co.*, 490 F.2d 810, 816 (5th Cir.), *cert. denied*, 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 62 (1974), but the City has not argued here or below that any deemed findings are clearly erroneous, and in the posture of this case a deemed findings theory cannot excuse the City's total failure to properly raise below any challenge to the sufficiency of the liability evidence against it. Nor has the City contended otherwise.

■ Where the issue has been properly preserved by motion for directed verdict, we review the sufficiency of the evidence in accordance with the rule of *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc), and "consider all the evidence—not just that evidence which supports the non-movers case." *Id.* at 374. Moreover, under this standard a "mere scintilla of evidence is insufficient" and a directed verdict is proper even if there is not "a complete absence of probative facts to support a jury verdict"; rather, to sustain a verdict the evidence must be "substantial." *Id.* at 374–75. While a verdict may be sustained by "reasonable inferences" from the evidence as a whole, *id.* at 374, plainly unreasonable inferences or those which amount to mere speculation or conjecture do not suffice. *See Mack v. Newton*, 737 F.2d 1343, 1350–51 (5th Cir.1984). But where the issue has not been properly preserved by motion for directed verdict,[8] "this Court

---

**5.** This passage commences the City's argument under its first point in its appellant's brief, which contains the following heading and single subheading, *viz.*:

"I.
"THE TRIAL COURT ERRED AS A MATTER OF LAW IN ENTERING A JUDGMENT ON THE JURY'S FINDING OF MUNICIPAL LIABILITY BECAUSE THE CITY POLICY WHICH THE JURY FOUND TO HAVE BEEN THE PROXIMATE CAUSE OF PLAINTIFF'S DEPRIVATION WAS NOT UNCONSTITUTIONAL.
"This Court should hold that a reasonable 'sobering up' period for a person arrested based on probable cause to believe he was intoxicated is a [*sic*] administrative step incident to the arrest and release of the person arrested and not an unconstitutional detention."

This section of the City's appellant's brief, and that complaining of the form of special interrogatory No. 2, are the only sections of the brief dealing with the City's liability (the other sections of the brief deal with the judgment against Brown).

**6.** A motion for directed verdict was made on Brown's behalf on the issue of qualified immunity.

**7.** After the verdict the City did file a motion for new trial or, alternatively, to alter or amend the judgment, but this motion challenged only the amount of damages, not the City's liability.

**8.** Objection to submission of an issue on grounds of lack of evidence has also been held to be adequate for this purpose. *See Wells v. Hico Independent School District*, 736 F.2d 243, 251–52 (5th Cir.1984), *cert. dismissed*, 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985).

cannot examine the evidence for sufficiency." *Delchamps, Inc. v. Borkin,* 429 F.2d 417, 418 (5th Cir.1970). In that situation any review is only to ascertain "whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a 'manifest miscarriage of justice.'" *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297 (5th Cir.1978). *See also Scheib v. Williams–McWilliams Co., Inc.,* 628 F.2d 509, 512 (5th Cir.1980); *Bunch v. Walter,* 673 F.2d 127, 129–131 (5th Cir.1982); *In re Owners of Harvey Oil Center (Sandoz v. Merchants Trust & Savings Bank),* 788 F.2d 275, 278 (5th Cir.1986). This standard of review is far narrower than that of *Boeing Co. v. Shipman. See Stewart v. Thigpen,* 730 F.2d 1002, 1007 (5th Cir. 1984). Moreover, appellate relief is limited to ordering a new trial. *See Hinojosa v. City of Terrell,* 834 F.2d 1223, 1228 (5th Cir.1988).

We conclude that while the evidence is *insufficient* to establish that the City's policy exceeded the constitutionally permissible limits herein articulated, so that under *Boeing* a directed verdict for the City would have been proper, nevertheless there was not a total absence of *any* evidence that the policy contemplated continued unbailable detention for four hours even though the authorities had in fact previously determined that the public intoxication warrantless arrestee was clearly sober and indeed had not been intoxicated. This evidence consisted of McConney's testimony as to what the booking officer told him when he sought to make bond and the fact that his booking record showed his arrest at 9:30 p.m. and carried the notation "1:30," which was four hours later. The testimony of Chief Brown, of a police lieutenant commanding the night shift at the jail, and of one of the arresting officers who had previously served at the jail, reflected that the City's policy was to release on bail those whom it determined to be clearly sober, notwithstanding that some fixed period of time since their arrest for public intoxi-

cation had not elapsed, and that any notation such as the "1:30" on McConney's record was merely for presumptive or rule-of-thumb purposes. There was no contrary documentary evidence. Under *Boeing* standards, we could not conclude, in light of the record as a whole, that the City's policy was to continue to detain despite actual determination of sobriety. What McConney reported the booking officer as saying would not constitute substantial evidence, in light of the record as a whole, to establish that the City's policy was unconstitutional; it would at most show a mistaken interpretation or application of the policy in that particular instance (and that only on the assumption that the booking officer actually determined that McConney was wholly sober, as opposed to merely humoring him), and that would not suffice for municipal liability. No other such instances were shown.[9] However, as noted, we are not applying *Boeing* standards. In *Hinojosa,* we observed that the requirement of a motion for directed verdict serves the dual purpose of:

> " 'enabl[ing] the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury, thereby affording it an opportunity to cure any defects in proof should the motion have merit.' " *Id.* at 1228 (emphasis omitted) (quoting *Merwine v. Board of Trustees,* 754 F.2d 631, 634 (5th Cir.), *cert. denied,* 474 U.S. 823, 106 S.Ct. 76, 88 L.Ed.2d 62 (1985).

In the present case, had the City raised its sufficiency issue before the jury retired, McConney would have at least had the opportunity to present additional evidence regarding the alleged policy of detaining those the officers have determined to be sober.

We further observe that the City's argument on appeal does not challenge the finding that the policy in question—the "four

---

9. McConney did testify that on two other occasions in Houston he had been arrested and jailed for public intoxication when in fact he was only suffering from an insulin reaction. However, he gave essentially no relevant details and did not state how long he was detained

following arrest. This would not suffice under *Boeing* standards to establish that the City's policy was unconstitutional, particularly as the evidence showed there were some 60,000 public intoxication arrests per year in Houston.

hour" policy—was a *policy of the City.*[10] Given that there was a *City* four hour policy, there is not a *total* absence of *any* evidence—as opposed to there being insufficient evidence on the record as a whole under *Boeing*—that it transgressed the limits herein set out.

It might be felt that affirmance here works a manifest miscarriage of justice. In one sense, McConney's suit against the City for events arising out of its saving of his life can hardly be characterized as "just." But this aspect of the suit's justice is unrelated to the contours of the City's detention policy and instead refers to a kind of justice over which a different and higher Court more appropriately exercises jurisdiction. In our highly litigious society, in which moral responsibilities are so often less emphasized than legal rights, it especially behooves those who venture into court to come prepared. This is not to say that every technicality will be exalted. Here, however, the City's failure to preserve the sufficiency of the evidence below was not merely technical, or an instance of simply selecting the wrong procedural vehicle for the purpose. Rather, the City made no attempt whatever to raise the sufficiency issue below, and its failure in this respect was across-the-board, total, and unambiguous. We have reversed for a new trial for lack of evidence even though no motion for directed verdict was made. *Hinojosa.* But in *Hinojosa* we reviewed the trial court's denial of a motion for new trial on the grounds of lack of evidence. Here, there was no such motion. Generally, if a new trial is to be granted, the sooner it is to be ordered the better, and thus we should encourage the raising of issues in the trial court, including by motion for new trial (if not sooner), rather than for the first time on appeal. We further note that although the size of the judgment may be large in relation to the injury, it is not complained of on appeal and is not large either absolutely or in relation to the appellant's resources. No injunctive or declaratory relief is involved.

We conclude that in this instance, the interests of orderly procedure are not sufficiently outweighed to justify our review and reversal under a *Boeing* standard notwithstanding the total failure to raise the insufficiency of the evidence below. Accordingly, we affirm the judgment against the City.

### Conclusion

For the reasons set forth above, we affirm the judgment against the City, and reverse that against Brown.

AFFIRMED IN PART, REVERSED IN PART.

GOLDBERG, Circuit Judge, specially concurring:

I am pleased to concur in the majority's fine opinion. For clarification purposes, I want to set forth one point that I believe is consistent with Judge Garwood's opinion for the court. The point centers on whether a municipal policy must itself be unconstitutional to support Section 1983 liability. Because the majority finds the city policy unconstitutional in this case, its opinion does not need to reach the more difficult issue that I address here purely for purposes of clarification.

A city can be held liable for the deprivation of an individual's constitutional rights in two different ways. One way is when the city itself, through its city council or an authorized final policymaker,[1] deprives a person of a constitutional right. The other way is when a city policy, not unconstitu-

---

**10.** In its brief the City argues:

"A four or five hour period is a reasonable time to detain someone arrested for public intoxication in order to ascertain that they have achieved sobriety and that it is medically safe to release them. The evidence shows that in 1983 the City of Houston arrested approximately 60,000 person (*sic*) for public intoxication. R.T. 3:70. It would be impossible for the City to check each person arrested for public intoxication every five or ten minutes to determine whether they had sobered up. In the instant case, the jury found that the City had a policy to detain such a person for four to five hours...."

"The City contends its policy is constitutional and requests this Court to hold that it is constitutional as the City maintains."

We agree, *provided* the policy does not encompass continued detention after the authorities actually determine beyond reasonable doubt that the party properly arrested without a warrant for public intoxication is wholly sober (and otherwise available to be then released on appropriate bail, if any).

**1.** *See City of St. Louis v. Praprotnik,* —— U.S. ——, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988); *Pembaur v. Cincinnati,* 475 U.S. 469, 481–84, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986).

tional in itself, causes the predicate unconstitutional act. Thus, an unconstitutional policy may be *sufficient* to establish municipal liability, but the unconstitutionality of a policy is not *necessary* in every type of case to hold a city liable.

First, when the city's policy or custom is the *actual, direct predicate* constitutional violation, of course, the policy is an unconstitutional policy. *See Newport v. Fact Concepts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (city council canceled concert permit for content-based reasons). The actor in such a case is the city governing body itself or a final policymaker. McConney's detention does not involve this *direct* type of municipal liability.

McConney was detained in jail by low-level [2] city employees. The Supreme Court has not yet informed us whether a "city can be subjected to liability for a policy that while not unconstitutional in and of itself, may give rise to constitutional deprivations" actually effectuated by low-level city employees. *City of St. Louis v. Praprotnik,* —— U.S. ——, 108 S.Ct. 915, 936, 99 L.Ed.2d 107 (1988) (plurality opinion; Justice Brennan's concurrence specifically notes that the issue is open); *see Harris v. City of Canton,* 798 F.2d 1414 (6th Cir. 1986), *cert. granted, City of Canton v. Harris,* —— U.S. ——, 108 S.Ct. 1105, 99 L.Ed.2d 267 (1988) (argued November 8, 1988 concerning municipal liability issue); *City of Springfield v. Kibbe,* 480 U.S. 257, 107 S.Ct. 1114, 1116, 1121–22, 94 L.Ed.2d 293 (O'Connor, J., dissenting). No case in our circuit has held that that a policy must be unconstitutional before liability may attach to a city.

Second, the city may be liable to a section 1983 plaintiff when the city policy *"causes"* the predicate unconstitutional act in violation of a specified standard of care. *See Stokes v. Bullins,* 844 F.2d 269, 272–75 (5th Cir.1988); *Grandstaff v. City of Borger,* 767 F.2d 161, 168–70 (5th Cir.1985); *Languirand v. Hayden* 717 F.2d 220 (5th Cir.1983). In these instances, of which McConney's case is one, the municipal policy or custom must be either grossly negligent, recklessly, or intentionally in disregard of a Section 1983 plaintiff's constitutional rights to support municipal liability.[3]

---

**2.** When I use the phrase "low-level" I intend no denigration and use the phrase as it is used in government parlance to refer to a nonpolicy-making echelon civil servant.

**3.** Requiring an unconstitutional municipal policy in every case would lead to undesirable and sometimes nonsensical consequences with respect to both the language of the statute and common sense. In the language of the statute, the elements of a § 1983 cause of action require a plaintiff to prove that: (1) a person; (2) acting under color of state law; (3) *subjected the plaintiff or caused the plaintiff to be subjected;* (4) to the deprivation of a right secured by the Constitution or laws of the United States. Elements three (causation) and four (predicate constitutional violation) involve separate inquiries. When a municipality "causes [the plaintiff] to be subjected" to a deprivation of a constitutional or statutory right, the question of causation should be concerned only with degrees of foreseeability and levels of conduct (negligence, gross negligence, recklessness, and intentional disregard).

Requiring an unconstitutional policy on top of a predicate violation (in presumably both constitutional and nonconstitutional cases) goes beyond the words of the statute and creates a nearly impregnable fortress for an injured plaintiff to pierce. Also, Congress intended that predicate violations can occur in both constitutional and nonconstitutional federal law cases.

It would be irrational to require an unconstitutional policy in a statutory case. The deprivation of a federal statutory right does not necessarily implicate the Constitution in every case. For example, imagine a case in which a city establishes a policy which violates a handicapped child's federal statutory right to receive a particular type of education. The predicate violation occurs when a principal in the local school, acting in accordance with the city's policy, refuses to provide the child with some extra assistance which the federal statute requires. The city policy does not have to be unconstitutional for the city to be liable because the city has "caused" the principal to deprive the handicapped child of a federal statutory right. *See generally Del A. v. Edwards,* 855 F.2d 1148 (5th Cir.1988) (en banc granted) (§ 1983 case involving Child Welfare Act).