**Kari BODE and Gina Nastasi, Plaintiffs,**

**v.**

**CITY OF FULLERTON; Officer Albert Rincon; Officer Christopher Wren; and Does 1 to 100, inclusive, Defendants.**

**Case No. SACV 10–835 AG(MLGx).**

United States District Court, C.D. California.

Sept. 26, 2011.

---

**1118**

Aren Kavcioglu, Douglas A. Linde, Erica L. Allen, The Linde Law Firm, Los Angeles, CA, John Howard Upton, Leah N. Berry, Morey & Upton, Costa Mesa, CA, for Plaintiff.

Blakney Ann Boggs, Bruce D. Praet, Ferguson Praet & Sherman, Santa Ana, CA, for Defendant.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT CITY OF FULLERTON'S MOTION FOR SUMMARY JUDGMENT

ANDREW J. GUILFORD, District Judge.

This case raises disturbing allegations of police misconduct. Plaintiffs Kari Bode ("Bode") and Gina Nastasi ("Nastasi") (collectively, the "Plaintifs") filed a Complaint ("Complaint") against the City of Fullerton ("City" or "Defendant"), Albert Rincon ("Rincon"), and Christopher Wren, alleging that Officer Rincon sexually harassed them during their arrest. The parties stipulated to the dismissal of Christopher Wren. Now Defendant City of Fullerton seeks summary judgment on all eight claims against it and on the issue of punitive damages. The Court DENIES Defendant's Motion for Summary Judgment ("Motion") as to Claims One through Eight. The Court GRANTS Defendant's Motion as to the issue of punitive damages.

### BACKGROUND

The following facts are based on admissible evidence, viewed in the light most favorable to the non-moving party.

The City hired Officer Rincon in 2006. (Rincon Depo. 30:1–8.) The City has a mandatory policy requiring all police officers to wear a Digital Audio Record ("DAR") at all times and turn them on when they are in contact with a suspect. (*Id.* at 35:15–36:7); (City 30(b)(6) Depo. 57:4–8; 60:19–22.) At the end of the officer's shift, they are required to transfer the audio files from the DAR to the City's computers. (Rincon Depo., 38:19–22.) The City also has a policy requiring, "whenever practical," for pat-downs to be conducted by an officer of the same sex as the person being searched, or in the alter-

native, for a witness officer to be present. (Opp., Ex. F, Defendant's Production Responses.)

The City claims that it first learned about allegations of misconduct against Rincon on November 3, 2008. (Mot. 9:20–24.) Plaintiffs urge the Court to find a reasonable possibility that there were earlier reports of such incidents. To support their claim, Plaintiffs rely on three facts. First, the City, through its FRCP 30(b)(6) witness, initially testified that the first date that the City learned of any such allegations was November 14, 2008. (City 30(b)(6) Depo., 203:25–204:4.) But now, the City admits that it learned about such allegations earlier, on November 3, 2008. Thus, the City got it wrong at least once. Second, the City does not provide any records, or cite to any deposition testimony, to back up its claim that it did not receive any complaints before November 3. (Mot. 10:7–9.) Third, in its deposition and production responses, the City refused to disclose whether or not there are any pre–2008 complaints on privilege grounds. (City 30(b)(6) Depo., 201:14–24; 202:5–17.) Considering all of the evidence in the light most favorable to Plaintiffs, the Court finds that there is a triable question whether or not the City did indeed know before 2008 of similar misconduct by Rincon.

After receiving the November 3, 2008 complaint, the City launched an investigation into Rincon's conduct. The City interviewed a woman named Jean Tavianini on November 4, 2008, about an incident which occurred on October 9, 2008. (Defendants' Statement of Uncontroverted Facts, "DUF" ¶ 4.) Bode was interviewed on November 15, 2008 about an incident which occurred on November 14, 2008. (DUF ¶ 6.) Nastasi was interviewed on November 17, 2008 about an incident which occurred August 1, 2008. (DUF ¶ 5.) On November 17, 2008, the City contacted the Orange County District Attorney's Office ("OCDA"), Investigator Curtis McLean ("McLean"), to further investigate sexual misconduct allegations against Rincon and determine whether Rincon should face criminal charges. (DUF ¶ 7.) On November 20, 2008, the City placed Rincon on administrative leave pending the outcome of the investigation. (DUF ¶ 8.)

McLean decided to investigate other women arrested by Rincon in 2008. There were twelve such women total. (McLean Depo. 29:1–19.) Out of those twelve, McLean found at least three *additional* women who alleged similar misconduct. (McLean Depo. 20:5–18–26:16) Later, the City found one more. (Opp. Ex. G, City Division Commander's Reprimand "Reprimand".) Thus, seven out of the twelve women alleged Rincon violated them in some way. Notably, some of the five women who did not make any claims against Rincon simply could not be reached for an interview. (McLean Depo. 28:21–23.) Out of the seven who reported violations, five were never prosecuted for their arrests. (McDaniel Decl. ¶¶ 8–10.)

Taken together, the accounts of the seven women reveal a similar pattern of misconduct. Rincon would arrest or detain a woman. He would then either make sexual propositions to the woman, touch them inappropriately, or both. (*Id.*) There was never a female officer present during any of the pat-downs. In fact, Rincon admitted that in his entire career as an officer, he never called a female officer to assist with a pat-down. (Rincon Depo. 255:23–256:2.) Finally, at some point during the detention Rincon would turn his DAR off. This is different than simply forgetting to switch it on. This means that Rincon chose to leave no audio recording of the arrest. Investigator McLean caught onto this suspicious pattern, commenting that

"I know that dealing with this case, there always seemed to be a point in time where [the DAR] would go off." (McLean Depo., 49:18–19.) When questioned, Rincon had no explanation for why he decided to turn off his DAR. (Rincon Depo. 158:12–22; 204:8–18.)

Once McLean finished his OCDA investigation, he sent his results to the District Attorney's Office. The District Attorney's Office decided not to seek criminal charges. There are no facts in the record that reveal why. McLean also provided his results to the City, along with the underlying materials. (McLean Depo. 67:12–20.)

Meanwhile, the City conducted its own disciplinary investigation. The final product of this investigation was the Division Commander's Reprimand for Rincon ("Reprimand"). (Opp., Ex. G.) The Reprimand lists all seven reported instances of alleged sexual misconduct. In response, the City gave Rincon two reprimands for violating the DAR policy, one reprimand for violating the pat-down policy, and one reprimand for misplacing Bode's driver's license. In six out of the seven instances, the City found that there "was no evidence of improper conduct" with regards to the alleged sexual assault. (*Id.*) The required disciplinary action was to receive a "reprimand," as well as training on what constitutes "practical" with respect to pat-downs, and on the importance of using gender assistance and having the DAR activated during searches. (*Id.*)

It is not clear what impact, if any, the reprimand had on Rincon's record. What is clear is that the City did not fire Rincon. It is a plausible inference that the City still gives Rincon free reign to arrest women.

### EVIDENTIARY OBJECTIONS

Parties submitted numerous evidentiary objections, most notably Plaintiffs' objection to the Declaration of the City Police Chief Kevin M. Hamilton. The Court has reviewed the objections and relies only on admissible evidence. *See F.T.C. v. Neovi, Inc.*, 598 F.Supp.2d 1104, 1118 n. 5 (S.D.Cal.2008) ("The parties have each filed evidentiary objections. However, in deciding the present motions, the Court has only relied upon admissible evidence."); *Schroeder v. San Diego Unified School Dist.*, Case No. 07–cv–1266–IEG (RBB), 2009 WL 1357414, at *2, n. 1 (S.D.Cal. May 13, 2009); *Doe v. Starbucks, Inc.*, No. 08–0582, 2009 WL 5183773, at *1 (C.D.Cal. Dec. 18, 2009).

### LEGAL STANDARD

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of

material fact. *Id.* at 322–23, 106 S.Ct. 2548. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.,* 210 F.3d 1099, 1103 (9th Cir. 2000).

## 1. *ANALYSIS*

The City now asks for summary judgment on all claims against it. Plaintiffs' primary claim against the City is a violation of civil rights under § 1983 (Claim Eight). Plaintiffs also allege state law claims under a theory of vicarious liability, including negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, assault, battery, battery by peace officer, and false imprisonment (Claims One through Seven). Finally, Plaintiffs seek punitive damages against the City.

### 1.1 Claim Eight: Civil Rights § 1983 Claims

Plaintiffs allege that the City is liable under § 1983. There is no vicarious liability under § 1983. *Monell v. New York Dep't. of Social Serv.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But the City may still be liable under § 1983 if (1) a City employee violated Plaintiffs' rights; (2) the City has customs, policies, or practices that amount to deliberate indifference to Plaintiffs' constitutional rights, and (3) the customs, policies, or practices were the moving force behind the employee's violations of Plaintiffs' rights. *Gibson v. County of Washoe,* 290 F.3d 1175, 1193–94 (9th Cir.2002). For the purposes of this Motion, the Court assumes—and the parties do not here dispute—that there is a triable issue of fact about whether Rincon violated Plaintiffs' civil rights.

Plaintiffs have provided sufficient evidence to raise a triable issue of fact as to whether the City had a policy, custom, or practice of failing to properly supervise its officers. *See City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Failure to supervise can rise to the level of a custom or policy "if the municipality tacitly authorizes these actions or displays deliberate indifference" towards the misconduct. *Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir.1987). The Court finds two solid arguments that sustain *Monell* liability under this theory.

First, the City's failure to sufficiently enforce the DAR and pat-down policies supports Plaintiffs' claim. Rincon never once requested a female officer for a pat-down, and turned off his DAR for the majority of his female arrests. Yet his disregard of policy went completely undetected, or deliberately ignored, prior to these allegations. It is a reasonable inference that those policies were put in place precisely to prevent the sort of civil rights violations that Plaintiffs now allege. Thus, the City's total failure to monitor officers to ensure that they were implementing these policies amounts to a deliberate indifference to Plaintiffs' civil rights. This is particularly troubling with respect to the DAR, which was a mandatory policy. Rincon turned in his DAR audio tape every night. He logged his arrests. How difficult could it be for the City to check the tapes after an arrest?

Second, the City's failure to investigate or punish sexual harassment allegations suggests tacit authorization. As stated above, Plaintiffs raise a triable issue of fact as to exactly when the City first learned about allegations against Rincon. The sheer volume of incidents in 2008 alone relative to Rincon's arrests is sufficient to call into question what exactly the City knew or should have known before November 2008. *See McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir.1989)

("Sufficiently numerous prior incidents of police misconduct, for example, may tend to prove a custom and accession to that custom by the municipality's policymakers."); *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir.1987) ("constructive knowledge may be inferred from the widespread extent of the practices, ... manifest opportunities and official duty of responsible policymakers to be informed ...") Most shocking is the City's weak "Reprimand" of Rincon. If one woman had brought an allegation of sexual assault, then the Court could understand how the City might have concluded that the allegations were not believable, and find no misconduct on Rincon's part. But to dismiss the accounts of *seven women* certainly raises questions about the City's custom and practice around sexual assault. Requiring Rincon to attend "pat-down" training is weak sauce that does nothing to hide the unpleasant taste of complicity. At the end of the day, the City put Rincon back onto the streets to continue arresting women despite a pattern of sexual harassment allegations. A reasonable juror could conclude, based on these facts, that the City simply did not care about what its officers did to women during arrest.

The Court DENIES Defendant's Motion for Summary Judgment on Plaintiffs' Claim Eight.

### 1.2 Claims One through Seven: State Claims

The City also seeks summary judgment on the state claims. The City raises a long and confused argument about the statutory basis for these claims as asserted against the City. But the City admits that it may be held *vicariously* liable under Cal. Gov.Code § 815.2(a) for the acts of its employees that are committed within the scope of employment. (Mot. At 12:19–13:9.) Under its own admission, there is a statutory basis for liability. *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 215, 285 Cal.Rptr. 99, 814 P.2d 1341 (1991) (finding that a city can be vicariously liable for the rape of a woman by an on-duty police officer); *Blankenhorn*, 485 F.3d at 487 (finding that § 815.2(a) "clearly allows for vicarious liability" against a city). Ultimately, the City does not contest the validity of the underlying allegations against its employee. The City is liable for the torts to the same extent as Rincon.

The Court DENIES Defendant's Motion for Summary Judgment on Plaintiffs' Claims One through Seven.

### 1.3 Punitive Damages

Defendant argues that public entities can not be held liable for exemplar or punitive damages. *See Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Bell v. Clackamas County*, 341 F.3d 858, 868 n. 4 (9th Cir. 2003); Cal. Gov.Code § 818. Plaintiffs do not oppose this argument. The Court agrees with Defendant.

The Court GRANTS Defendant's Motion for Summary Judgment as to the issue of punitive damages.

### *SUMMARY ADJUDICATION*

Defendant sought, in the alternative, summary adjudication on fifteen issues. The majority of those issues are addressed within the body of this Opinion. Those that are not are either moot or irrelevant.

### *DISPOSITION*

Having considered all of the relevant facts in the light most favorable to Plaintiffs, the Court DENIES Defendant's Motion as to Claims One through Eight, and GRANTS it as to the issue of punitive damages. The Court VACATES Defen-

dant's request for Summary Adjudication as moot or irrelevant.

IT IS SO ORDERED.