JENNIFER WALKER ELROD, Circuit Judge,
joined by HAYNES and HIGGINSON, Circuit Judges, concurring in the judgment:
As reflected by the superb majority and dissenting opinions, the question of whether the record contains sufficient evidence to support a finding of deliberate indifference is a close and difficult one. In my view, this case can be resolved more easily by focusing on the issue of causation, as the evidence is insufficient to support a finding that Hampton’s actions caused plaintiffs’ injuries. Accordingly, I concur only in the judgment. Cf. Salinas v. Texas, — U.S. -, 133 S.Ct. 2174, 2184, 186 L.Ed.2d 376 (2013) (Thomas, J., concurring in the judgment) (“I think there is a simpler way to resolve this case.”).
I.
In addition to proving that the defendant was deliberately indifferent, a plaintiff must prove that the defendant’s deliberate indifference caused the plaintiffs injury. See Lemire v. Cal. Dep’t of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir.2013) (“[Pjlaintiffs alleging deliberate indifference must also demonstrate that the defendants’ actions were both an actual and proximate cause of their injuries.”); Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1584 (11th Cir.1995) (“[Deliberate indifference ... must ... have been the proximate cause of the plaintiffs’ injuries .... ” (internal quotation marks omitted)). Thus, in order to establish liability against Hampton, “the Plaintiffs must prove that [Hampton] set in motion events that would foreseeably cause the deprivation of Plaintiffs’ constitutional rights.” Morris v. Dearborne, 181 F.3d 657, 672 (5th Cir.1999). In my view, the record does not support the conclusion that Hampton’s actions set the ensuing events into motion, and even if it did, liability still would not attach because Taylor’s dropping the keys to the exercise pens was an unforeseeable, superseding cause of plaintiffs’ injuries.
A.
The record in this case does not contain evidence that Hampton’s actions set the ensuing events into motion. To the contrary, the evidence allows only the conclusion that the events in the exercise yard would have occurred regardless of whether Hampton supplied Taylor with extra ammunition for the block gun. The timeline is undisputed: (1) Hampton handed Taylor the block gun but not the ammunition; (2) two inmates escaped from their exercise pens and ran toward Taylor; (3) Taylor pointed the block gun at the inmates but did not attempt to fire it, dropped the keys to the exercise pen, and fled the yard; and (4) the inmates used the keys to release other inmates and then to access the plaintiffs’ pens, where the attacks occurred.
These events followed one another in time, but chronology is not causation. As *297 for the inmates, there is no evidence suggesting that the inmates knew Taylor was short on ammunition; thus, Hampton’s actions played no role in their decision to launch an attack. As for Taylor, there is no evidence suggesting that he would not have abandoned his post if he had additional ammunition. In fact, the record contains a statement from Taylor in which he explains his reason for fleeing. Absent from that statement is any indication that he fled because he lacked ammunition for the block gun: “I raised the Block Gun and pointed in the direction of both inmates. Inmate Nash and Inmate Hayes hesitated and I, not knowing how many inmates were out, decided to run into the building. I admit that I panicked and somehow dropped the keys to the Exercise Pens.” In other words, Taylor fled because he was afraid, not because he did not have two extra rounds of ammunition in his pocket. Taylor had no idea how many prisoners were on the loose, and he was not waiting around to do a head count and an assessment of his supply of rubber pellets.
The dissenting opinion states that “Taylor may have assumed the gun was loaded but realized that he had no extra ammunition, leaving him with at most one round to stop two armed inmates,” but this speculation is inconsistent with Taylor’s statement. Although the jury was free to make rational and supportable inferences from the record evidence, it was not permitted to engage in mere conjecture or to make unreasonable inferences. See Huffman v. Union Pac. R.R., 675 F.3d 412, 426 (5th Cir.2012) (“Jurors still may not simply guess.”); McConney v. City of Hous., 863 F.2d 1180, 1186 (5th Cir.1989) (“[Pjlainly unreasonable inferences or those which amount to mere speculation or conjecture do not suffice.”); Nichols Constr. Corp. v. Cessna Aircraft Co., 808 F.2d 340, 346 (5th Cir.1985) (“Because of the requirement that the verdict be supported by substantial evidence, a verdict may not rest on speculation and conjecture.”).
The record does not contain any evidence that Hampton’s actions influenced either the inmates’ or Taylor’s actions. The only conclusion the record evidence permits is that the tragic events in the exercise yard would have played out the same way — with the inmates launching an attack and Taylor fleeing — regardless of whether Hampton had provided Taylor with the extra ammunition. Therefore, Hampton’s failure to give Taylor ammunition did not set in motion the events leading to plaintiffs’ injuries, and thus was not the cause of plaintiffs’ injuries.[75]
*298 B.
Even assuming arguendo that Hampton’s actions caused Taylor to flee, Hampton still would not be liable because Taylor’s dropping the keys was an unforeseeable, superseding cause of plaintiffs’ injuries. When the act of a third person “actively operates in producing harm to another after the [defendant’s deliberately indifferent] act or omission has been committed,” the third person’s act is deemed an “intervening force.” Restatement (Second) of Torts § 441 (1965).[76] If this “intervening force” is not a foreseeable result of the defendant’s deliberate indifference, then the intervening force is a “superseding cause” and the defendant cannot be held liable for the resulting harm. Id. at § 440; accord Murray v. Earle, 405 F.3d 278, 290-91 (5th Cir.2005). In this manner, the “superseding cause” doctrine cuts off the liability of an actor when the plaintiffs injury “was actually brought about by a later cause of independent origin that was not foreseeable.” Exxon Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 837, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996) (internal quotation marks omitted).
Here, it is undisputed that the escaped inmates could not have accessed the plaintiffs’ pens without the- keys that Taylor dropped. Therefore, Taylor’s dropping the keys was an intervening force that actively operated in producing harm to the plaintiffs. Whether Hampton can be held liable for plaintiffs’ injuries, despite this intervening force, turns on whether the intervening force also was a “superseding cause” — ie., whether Taylor’s dropping the keys was a foreseeable result of Hampton’s failure to provide Taylor with ammunition. In my view, it was not foreseeable that Hampton’s failure to provide Taylor with two rubber pellets would result in Taylor’s handing over to the inmates the keys to the exercise pens.
To be sure, an intervening act of negligence — and Taylor’s dropping the keys certainly was negligent — is not automatically a superseding cause that cuts off the liability of preceding actors. This is because even a negligent act can be foreseeable. See, e.g., Gordon v. Niagara Mach. & Tool Works, 574 F.2d 1182, 1193 (5th Cir.1978). To help draw the line between foreseeable and unforeseeable negligent acts by third parties, we have explained that an intervening negligent act is not a superseding cause if: (1) the defendant should have realized that the third person might act in the way he did; (2) “a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted;” or (3) “the intervening act is a normal consequence of a situation created by the [defendant’s] conduct.” Becker v. Tidewater, Inc., 586 F.3d 358, 372 (5th Cir.2009) (internal quotation marks omitted); see also Restatement (Second) of Torts § 447; Prosser and Keeton, The Law of Torts § 44 (5th ed.1984).
Taylor’s dropping the keys does not fit into any of those three boxes. As for (1), although Hampton perhaps should have realized that a lack of ammunition could cause Taylor to flee, Hampton had no reason to believe that Taylor would drop the keys and allow the inmates to obtain them. *299 As for (2), a reasonable person would regard it as “highly extraordinary” that a prison guard abandoned the keys in a place the inmates could obtain them. As for (3), Taylor’s dropping the keys is not the “normal consequence” of his being short on ammunition. Simply put, Hampton could not have foreseen that Taylor would respond to a crisis in the exercise yard by allowing the inmates to obtain the keys. Without the keys, the escaped inmates could not have injured the plaintiffs. Therefore, in my view, Taylor’s act was an unforeseeable, superseding cause of plaintiffs’ injuries, and Hampton cannot be held liable.
II.
It is true that “[w]e accord great deference to the jury’s verdict when evaluating the sufficiency of the evidence,” Thomas v. Tex. Dep’t of Criminal Justice, 220 F.3d 389, 392 (5th Cir.2000), and that we “are not to tamper lightly with the considered judgment of those drawn together at one point in time to render a judgment that is representative of the good common sense of the American people,” E.E.O.C. v. Boh Bros. Constr. Co., 731 F.3d 444, 452 (5th Cir.2013) (en banc) (internal quotation marks omitted). However, deferential review is not non-existent review, and we accordingly have reversed jury verdicts where the record is devoid of support for the jury’s finding of causation. See, e.g., Huffman, 675 F.3d at 426; Hill v. Anderson, 420 Fed.Appx. 427, 432 (5th Cir.2011); Nichols Constr. Corp., 808 F.2d at 347. Here, the causal link between Hampton’s actions and the close-in-time assaults was severed not once, but twice. Hampton’s failure to provide Taylor with ammunition did not influence the inmates’ or Taylor’s actions in any way, and even if it did, Taylor’s dropping the keys was a superseding cause. Accordingly, I would reverse the judgment of the district court.

. The district court cited two snippets of testimony that purportedly supported the jury's finding of causation. However, neither is on-point. The first piece of testimony is from Hampton herself; she testified that her failure to load the block gun "could have and it could not [have]” caused plaintiffs' injuries. This is a mere truism. — anything "could have or could not have” played a role. It is not evidence that Hampton's acts actually did cause plaintiffs’ injuries. Plaintiffs' counsel repeatedly sought a concession on causation from Hampton, but she did not oblige. The second piece of testimony is from plaintiffs’ expert. Although plaintiffs’ expert offered numerous opinions, he did not state that Hampton’s failure to provide Taylor with ammunition was a cause of plaintiff’s injuries. He opined that Hampton’s failure to inspect the pens constituted deliberate indifference, that Hampton’s failure to end yard call in a timely fashion constituted deliberate indifference, and that Hampton’s failure to check the block gun and to give Taylor ammunition for the block gun constituted deliberate indifference. He also testified that Hampton's failure to inspect the pens was a contributing cause of plaintiffs' injuries and that Hampton’s failure to end yard call in a timely fashion was a contributing cause of plaintiffs’ injuries. Plaintiffs' expert did not, however, testify that Hampton’s failure to give ammunition to Taylor was a contributing cause of plaintiffs’ injuries.

. Many of the cases and authorities discussing the "superseding cause” doctrine do so in the context of negligence, rather than deliberate indifference. The principle applies the same way in both contexts. See, e.g., Conn v. City of Reno, 591 F.3d 1081, 1101 (9th Cir.2010), cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn, — U.S. -, 131 S.Ct. 1812, 179 L.Ed.2d 769 (2011), and opinion reinstated, 658 F.3d 897 (9th Cir.2011).