21 F.3d 425
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Larry BROWN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Owen CARNEY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth WILLIAMS, Defendant-Appellant.
 Nos. 93-5378, 93-5379, 93-5380.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 10, 1994.
Decided March 22, 1994.
 
 Appeals from the United States District Court for the District of South Carolina, at Charleston. Solomon Blatt, Jr., Senior District Judge. (CR-92-191)
 James Kevin Holmes, Charleston, SC (Michael P. O'Connell, Asst. Federal Public Defender, Charleston, SC, Francis Marion Kirk, Goose Creek, SC, on brief), for appellants.
 Benjamin A. Hagood, Jr., Asst. U.S. Atty. (J. Preston Strom, Jr., U.S. Atty., Joseph P. Griffith, Jr., Asst. U.S. Atty., on brief), Charleston, SC, for appellee.
 D.S.C.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants Larry Brown ("Brown"), Owen Carney ("Carney"), and Kenneth Williams ("Williams") were each convicted of one count of conspiracy to possess with the intent to distribute cocaine, and possession of cocaine with the intent to distribute. Appellants challenge the district court's denial of their pre-trial motion to suppress evidence. We affirm.
 
 
 2
 * On March 5, 1992, South Carolina Highway Patrolman Tom Summers ("Patrolman Summers") was on duty near the South Carolina-Georgia border. Patrolman Summers is a member of the A.C.E. ("aggressive criminal enforcement") team, a group of South Carolina highway patrolmen who are specially trained to apprehend motorists involved in illegal activity. About 9:45 p.m., he clocked Appellants' car driving five miles over the speed limit on north-bound Interstate Highway 95.[1] He pulled the car over, intending to issue the driver a warning ticket. Patrolman Summers asked the driver of the vehicle, Appellant Carney, for a driver's license and a vehicle registration, and asked him to step to the rear of the car. Appellant Williams and Appellant Brown, the car's only other occupants, remained in the car.
 
 
 3
 Appellant Carney produced a driver's license in his name, and a rental car agreement in the name of a woman from Charleston, South Carolina. No drivers, other than the female renter, were listed on the rental agreement. In response to Patrolman Summers's questions, Carney stated that he borrowed the car from a friend, that he was on his way from Miami to Charleston to visit his aunt, and that the passengers were his cousins. During this conversation with Carney, Patrolman Summers wrote him a warning ticket.
 
 
 4
 After giving Carney the ticket, Patrolman Summers separately questioned the other two men. Appellant Williams, who sat in the front passenger seat, stated that the three men were friends, and that they were going from Miami to Summerville, South Carolina. Appellant Brown, who sat in the back seat, stated that the three men were friends and that he did not know where they were going.
 
 
 5
 After questioning Williams and Brown, Patrolman Summers asked Carney if there was anything illegal in the car. When Carney responded in the negative, Patrolman Summers asked Carney if he would consent to a search of the car. Carney agreed, and signed a written consent form, consenting to the search of the "vehicle and the contents within it." (J.A. at 195). After Carney agreed to the search, Patrolman Summers radioed for a back-up, Patrolman John Hunnicut, and waited for him to arrive. After Patrolman Hunnicut arrived, and before searching the car, Patrolman Summers conducted a pat-down frisk of Appellant Carney.
 
 
 6
 During the pat-down, Patrolman Summers "felt a hard object like the--felt just like the handle of a gun" below Carney's belly button. (J.A. at 33). He then grabbed the object, pushed Carney against the car, and told Patrolman Hunnicut that Carney "had a gun on him, and I specifically told him he was loaded, I believe he was loaded." Id. Patrolman Summers recovered two potato-like, tape-wrapped packages from Carney's sweat pants. Appellants Williams and Brown were then removed from the car and frisked. Williams also had two such packages in his crotch area, and Brown had one. Another such package was found underneath the back seat where Brown had been sitting.[2] The substance inside the packages field-tested positive for cocaine.
 
 
 7
 The Appellants moved to suppress the cocaine on Fourth Amendment grounds. The district court concluded that Patrolman Summers's stop of the vehicle was not pretextual; his search of the car was legal because he received consent to search the car, and, in any event, he had a reasonable articulable suspicion to search the car; and Patrolman Summers had a reasonable articulable suspicion, based on the totality of the circumstances, to believe that Carney was armed, and therefore the pat-down of Carney did not violate the Fourth Amendment. (J.A. at 182-92). Accordingly, the district court denied the motion to suppress, and permitted the government to introduce the cocaine as evidence at trial. On appeal, Appellants challenge the denial of their suppression motion.
 
 II
 
 8
 When reviewing a district court's ruling on a motion to suppress, the Court "review[s] legal conclusions involved in the district court's suppression determination de novo but review[s] factual findings underlying the legal conclusions subject to the clearly erroneous standard." United States v. Rusher, 966 F.2d 868, 873 (4th Cir.) (citing United States v. Ramapuram, 632 F.2d 1149, 1155 (4th Cir.1980), cert. denied, 450 U.S. 1030 (1981)), cert. denied, 113 S.Ct. 351 (1992).
 
 
 9
 * Appellants contend that because the patrolman, allegedly pursuant to A.C.E. team routine, issued only a warning ticket and sought permission to search the car, the stop was a pretext to search for drugs. On the facts of the case, this claim is without merit.
 
 
 10
 "[W]hen an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment." United States v. Hassan El, 5 F.3d 726, 730 (4th Cir.), petition for cert. filed, --- U.S.L.W. ---- (U.S. Dec. 13, 1993) (No. 93-7067). "Such a limited detention does not become 'unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity.' " Id. (quoting United States v. Cummins, 920 F.2d 498, 499-501 (8th Cir.1990), cert. denied, 112 S.Ct. 428 (1991)).
 
 
 11
 Applying this objective test to the facts here, the stop did not violate the Fourth Amendment. Patrolman Summers clocked the car at a speed in excess of the posted limit.[3] Appellants do not contend that they were not speeding. Accordingly, because the officer observed a traffic violation, the district court correctly found that the stop did not violate the Fourth Amendment.
 
 B
 
 12
 Second, Appellants contend that after Patrolman Summers issued them a warning ticket, his further detention and questioning of them violated the Fourth Amendment because he did not have a reasonable articulable suspicion to support an investigatory detention. We do not agree.
 
 The district court found that
 
 13
 the car was a rented car, rented not in the name of the driver; it had a different license on it ... than that on the rental sheet; that ... the driver was extremely nervous, and the description by the patrolman of nervous action of the driver was an extreme situation; that the driver told him that ... he was going to Charleston, and they were all going to Charleston, and these two passengers were his cousins.
 
 
 14
 (J.A. at 183-84). Based on the facts found by the district court, which we do not find to be clearly erroneous, we conclude that the continued detention and questioning of Appellants did not violate the Fourth Amendment.
 
 
 15
 The scope of a valid traffic stop is generally limited to checking a driver's license and vehicle registration, running a computer check, and issuing a citation:
 
 
 16
 "When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning."
 
 
 17
 United States v. Rusher, 966 F.2d at 876 (quoting United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir.1988) (citation omitted)). Even a driver who produces such information, however, may be detained if the officer has "a reasonable suspicion of a serious crime." Id. at 876-77 (citing Florida v. Royer, 460 U.S. 491, 498-99 (1983) (other citation omitted)).
 
 
 18
 In this case, Appellant Carney did not produce documentation that he was allowed to operate the car. Whether or not further detention and questioning was warranted on that basis alone, the totality of the circumstances found by the district court support the conclusion that Patrolman Summers had "a reasonable suspicion of a serious crime" sufficient to justify the investigative detention. Id.; see United States v. Sokolow, 490 U.S. 1, 8 (1989). We therefore conclude that the investigative detention of appellants was constitutional.
 
 C
 
 19
 Appellant Carney contends that the pat-down of his person violated the Fourth Amendment.[4] Under the facts of this case, the pat-down of Carney, which resulted in the recovery of the drugs, can be justified, if at all, only on the grounds that the officer reasonably suspected that Carney was armed and dangerous. Terry v. Ohio, 392 U.S. 1, 27 (1968). If Patrolman Summers had a reasonable articulable suspicion that Appellant Carney was engaged in criminal activity, then he had a right to question him, "and, in connection with that questioning, to conduct a limited search for weapons provided the officer reasonably feared that the one to be questioned might be armed." United States v. Bull, 565 F.2d 869, 870 (4th Cir.1977) (citing Terry, 392 U.S. at 29; Adams v. Williams, 407 U.S. 143, 146 (1972)), cert. denied, 435 U.S. 946 (1978).
 
 
 20
 Appellants primarily contend that the A.C.E. unit's routine practice is to pat-down anyone who consents to a search of his car prior to the search of the car. Therefore, Appellants claim that the pat-down of Carney was merely a matter of routine, and not due to a reasonable articulable belief. In addition, they argue that Patrolman Summers's actions do not indicate that he believed that Carney was armed and dangerous.[5] As to their first contention, it is unlikely that a pat-down based solely upon such a routine practice, if one exists, would meet the "reasonable, individualized suspicion" required by Terry. Maryland v. Buie, 494 U.S. 325, 334-35 n. 2 (1990). Nevertheless, we need not decide this question. The government does not attempt to justify, nor did the district court uphold, the pat-down on the grounds that it was a routine procedure. Rather, as the district court concluded, the specific facts of this case support the officer's actions.
 
 
 21
 As the situation developed, Patrolman Summers accumulated sufficient information, by the time he frisked Carney, to have "reasonable grounds to believe that [Carney] was armed and dangerous." Terry, 392 U.S. at 30.[6] As the district court found, the car was rented in the name of a woman from Charleston; Appellant Carney was not listed on the rental agreement as an authorized driver; Carney displayed extreme nervousness; and Carney and the passengers gave inconsistent answers to Patrolman Summers's questions about their relationship to each other and about where they were going. Indeed, as the district court found, even though Appellant Brown had ridden in the car four hundred miles or more, he told the officer that he did not know where they were going. Although any one of these factors taken alone might not justify a protective pat-down, "we think taken together they amount to reasonable suspicion." Sokolow, 490 U.S. at 9 (citations omitted).[7] Our conclusion that the limited search was proper is buttressed by the nature of the encounter--"roadside encounters between police and suspects are especially hazardous." Michigan v. Long, 463 U.S. 1032, 1049 (1983). We therefore find that the pat-down did not violate the Fourth Amendment. As such, the district court properly admitted the seized cocaine into evidence.
 
 III
 
 22
 Accordingly, the judgment of the district court is
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Appellants do not contest the speed at which they were travelling
 
 
 [2]
 Brown testified that when he saw Patrolman Summers pat-down Carney, he tried to remove his two packages from his person to place them under the seat. He was only successful in removing one
 
 
 [3]
 The officer justified the stop solely on the speed of the car and the South Carolina Highway Patrol's "no tolerance" policy for speeding. Prior to stopping the vehicle, the officer knew only that the car was speeding and could see only the headlights of the car. He could not see the occupants, nor did he know how many persons were in the car. Indeed, the district court specifically credited the officer's testimony that "he stopped [the car] not because he wanted to search, but because it was violating the speed limit." (J.A. at 183)
 
 
 [4]
 It is undisputed that the consent form which Carney signed only provided consent to a search of the vehicle and its contents, not to a patdown or search of his person
 
 
 [5]
 Appellants make no contention that the officer, once he began the patdown, did not reasonably believe that the packages he felt were a weapon
 
 
 [6]
 Although the officer testified that he did not know that Carney was armed, such knowledge is not required. Id. at 27
 
 
 [7]
 As Patrolman Summers testified, these facts were all "indicators" that led him to believe that Carney might be a threat to his safety. (J.A. at 94, 101-02)