UNITED STATES of America, Appellee,

v.

Fred BULL, Jr., Appellant.

No. 77–1315.

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 10, 1977.

Decided Nov. 23, 1977.

Brian K. Miller, Richmond, Va., for appellant.

Alexandra E. Divine, Third-Year Law Student (William B. Cummings, U. S. Atty., Alexandria, Va., and David A. Schneider, Asst. U. S. Atty., Richmond, Va., on brief) for appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

PER CURIAM:

The appellant was found guilty by a jury of possession of a firearm in violation of App., § 1202(a)(1), 18 U.S.C. He has appealed, alleging that the court erred in finding that the "stop and frisk" conducted by the police officer, during which the firearm was discovered, was reasonable or proper and in failing to suppress evidence of the discovery of the weapon. We affirm.

The critical issue is whether the "stop and frisk" of the defendant, which resulted in the discovery of the concealed weapon and the subsequent arrest, was a "stop and frisk" or an actual arrest and, whether if a "stop and frisk" it was reasonable under the circumstances. This is so because, if the "stop and frisk" was valid, the confiscation of the weapon on which the prosecution rested, was necessarily valid since it was abandoned by the defendant in open view of the accosting officer.

■ The officer involved testified that his initial accosting of the defendant was a "stop and frisk" and not an arrest. All the circumstances, save the one cited by the defendant, support this testimony of the officer. The one circumstance on which the defendant relies for his contention that the action of the officer constituted an arrest was the use of his gun when he accosted the defendant. This fact, standing alone, however, is not sufficient to constitute the action of the officer as an arrest; it is but one circumstance, along with all the others surrounding the incident, to be weighed in determining the character of the officer's action.[1] Considering all the circumstances, as the district judge did, the conclusion that the action of the officer in stopping the defendant was not an arrest is amply supported in the record.

■ Accepting the finding that the action of the officer was a "stop and frisk," the next issue is whether the "stop and frisk" was proper, i. e., did the officer have a reasonable and "founded" suspicion that criminal activity might be afoot. If he had such a "founded" suspicion, he had a right to stop the defendant in order to question him, and, in connection with that questioning, to conduct a limited search for weapons provided the officer reasonably feared that the one to be questioned might be armed. *Terry v. Ohio* (1968) 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Adams v. Williams* (1972) 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612.[2] Among the circumstances to be considered in connection with this issue are the "characteristics of the area" where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of

1. *United States v. Worthington* (5th Cir. 1977) 544 F.2d 1275, 1280, n. 3, U.S. appeal pending; *United States v. Maslanka* (5th Cir. 1974) 501 F.2d 208, 213, n. 10, *cert. denied* 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 ("[t]o require an officer to risk his life in order to make an investigatory stop would run contrary to the intent of *Terry v. Ohio* * * *."); *United States v. Russell* (9th Cir. 1976) 546 F.2d 839, 841 (Wright, J., concurring); *United States v. Richards* (9th Cir. 1974) 500 F.2d 1025, 1028, *cert. denied* 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393.

2. *See, United States v. Magda* (2d Cir. 1976) 547 F.2d 756, 758: "The *Terry* Court found that the governmental interest in crime prevention and detection would permit a police officer in appropriate circumstances to 'approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.'"

their presence. *See United States v. Brignoni-Ponce* (1975) 422 U.S. 873, 884–85, 95 S.Ct. 2574, 45 L.Ed.2d 607. In evaluating or assessing such circumstances—particularly the conduct of the suspect the officer is entitled to draw upon his own experience as an officer. *Terry v. Ohio, supra,* 392 U.S. at 27, 88 S.Ct. 1868. This is so because "[c]onduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer." *Davis v. United States* (1969) 133 U.S. App.D.C. 172, 174, 409 F.2d 458, 460, *cert. denied* 395 U.S. 949, 89 S.Ct. 2031, 23 L.Ed.2d 469. *United States v. Purry* (1976) 178 U.S.App.D.C. 139, 142, 545 F.2d 217, 220.

■ In this case, the officer had long been engaged in investigating night-time burglaries in shopping areas such as that involved here. While he was traveling in an unmarked car, the car was one well known in the community to be of the type used by plain-clothes detectives, such as the officer in this case. The time was late and most of the stores in the area had long since been closed. The defendant and his companion were the only ones observable in the area where they were seen by the officer, and there was no vehicular traffic. They seemed to be wandering aimlessly about the area, looking the area over. When they saw the officer approaching, they turned their backs and bent over as if they were tying their shoes, in an apparent effort to avoid having their faces observed by the officer. When the officer passed, he looked in his rear-view mirror and observed that the defendant and his companion promptly looked up in order to observe carefully where the officer went.

Because of the suspicious conduct of the defendant and his companion, the officer proceeded beyond the sight of the defendant, stopped his car, got out and hid behind some bushes to observe the defendant and his companion as they proceeded in his direction. When the defendant and his companion drew near, the officer stopped the two of them, and at this point, he noticed that they had on hats from beneath which protruded panty hose, and with companion officers whom he had called to the scene for assistance, he instructed them to turn around for frisking preparatory to questioning them. His determination to frisk them was prompted, he explained, by the fact that one of the parties had on a jacket on a warm night under which he feared a weapon might be concealed. At this point, he observed the defendant remove a firearm from his belt, drop it to the ground and kick it under the police car, in plain view of the officer. The officer later seized the weapon which the defendant had dropped and the arrest of the defendant followed. We are satisfied that, under the circumstances there was probable cause for the "stop and frisk." Since the "stop and frisk" was reasonable, the seizure of the weapon, abandoned by the defendant in plain view of the accosting officer, in turn was proper. *Harris v. United States* (1968) 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067. *See, United States v. McLaughlin* (9th Cir. 1975) 525 F.2d 517, 519, *cert. denied* 427 U.S. 904, 96 S.Ct. 3190, 49 L.Ed.2d 1198; *United States v. Maryland* (5th Cir. 1973) 479 F.2d 566, 568; *Robinson v. Parratt* (D.Neb.1976) 421 F.Supp. 664, 668–69, *aff'd.,* 8th Cir., 546 F.2d 764.

The judgment of the district court is accordingly

AFFIRMED.