**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**James Morrow ROPER,**
**Defendant-Appellee.**

No. 82–8476.

United States Court of Appeals,
Eleventh Circuit.

April 15, 1983.

Julie E. Carnes, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellant.

H. Darrell Greene, Marietta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY, Circuit Judge, and O'KELLEY *, District Judge.

RONEY, Circuit Judge:

■ A bail bond company flyer describing James Roper and his vehicle stated that Roper was wanted for federal bail jumping. A police officer who had seen the flyer stopped Roper's car and approached it with his gun drawn. As he got out of the car, Roper surrendered a gun which had been on his ankle. When Roper was indicted under 18 U.S.C.A. § 922(h) and 18 U.S.C.A. App. § 1202, which prohibit the receipt and possession of a gun by a convicted felon, he moved to suppress the gun as the fruit of an unlawful arrest. The district court granted the motion, and the Govern-

ment appeals. 18 U.S.C.A. § 3731. Because the officer's encounter with Roper constituted an investigative stop supported by reasonable suspicion, not an arrest, we reverse. Under the facts of this case, we hold that a drawn gun by a police officer did not convert an otherwise investigative stop into an arrest, and that the bail bond flyer was sufficient to create reasonable suspicion.

■ The district court found the encounter to be an arrest lacking the requisite probable cause. We agree that there was not probable cause to make an arrest when the car was first stopped. If there was merely an investigatory stop, however, only reasonable suspicion is required to pass constitutional muster. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ The distinction between an arrest and an investigatory stop depends upon the nature and degree of the intrusion under all the facts of the particular encounter. *See United States v. Hill,* 626 F.2d 429 (5th Cir.1980); *United States v. Ashcroft,* 607 F.2d 1167 (5th Cir.1979), *cert. denied,* 446 U.S. 966, 100 S.Ct. 2944, 64 L.Ed.2d 826 (1980). The facts are important.

In May, 1981, after the district court for the Southern District of Alabama was notified that James Roper's appeal had been dismissed for want of prosecution, the district court clerk sent a notice to Roper, presumably at his last known address, and to Cotton Belt Insurance Company, the cosigner of Roper's appearance bond, requesting that Roper be surrendered to the United States Marshal in Alabama. Under the terms of his bond, Roper was apparently permitted to be in Atlanta. It was later learned that his appeal had been erroneously dismissed. Prior to learning of that error, Cotton Belt sent instructions to its Atlanta affiliate to locate and apprehend Roper. As part of the effort to locate Roper, Sid Groome prepared a flyer which contained a picture of Roper, his description,

---

* Honorable William C. O'Kelley, U.S. District Judge for the Northern District of Georgia, sitting by designation.

his driver's license number, a description of his automobile, and his auto tag number. The flyer stated that Roper was wanted for federal bail jumping in the Southern District of Alabama, and requested anyone with information about him to contact the Dixie Bonding Company in Atlanta, Georgia. Groome's flyers were posted in some police stations. Major Sykes of the Atlanta Police Department saw the flyer in Groome's office, took one back to the police station, and posted it on the station bulletin board.

On June 25, 1981, Atlanta police officer Arnold Husser saw the flyer concerning Roper in the police station. Around 7:00 p.m. the same day, he observed a vehicle which matched the description and tag number described in the flyer. He confirmed through a radio check that the tag number was registered to Roper, and requested assistance. Officer Husser stopped the vehicle in a restaurant parking lot, approached the driver's side of the car with his pistol drawn, and told the two persons in the car to put their hands on the dash. Almost immediately, Lieutenant Lauth of the Atlanta Police Department arrived and proceeded to the passenger side of the vehicle. Officer Husser got the driver, Roper's son, to exit the car, and Lieutenant Lauth got Roper, who was sitting on the passenger side, out of the car. As he left the car, Roper advised Lauth that he had a pistol on his ankle. Lauth retrieved the gun. There was no evidence that Lieutenant Lauth had his gun drawn at any time during the encounter.

The two officers detained Roper and his son, radioed the National Crime Information Center, and discovered that a probation violation warrant for Roper's arrest had been issued by Cobb County, Georgia. Roper was then advised that he was under arrest on the basis of the warrant from Cobb County, and he was taken to the police precinct. Roper's son was released after the officers determined that no charges were pending against him.

Roper does not strenuously contend there was no probable cause for arrest on the Cobb County warrant. He contends that the initial stop was illegal. The Supreme Court has recognized that some brief detentions by law enforcement officers do not rise to the level of an arrest and may be supported by less than probable cause. *See United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Describing the kind of stop that may be based on reasonable suspicion alone, the Court stated:

> A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

A number of factors indicate that the detention of Roper was an investigative stop rather than an arrest. Roper was detained only very briefly before his arrest. The driver was released within a few minutes. Officer Husser testified that "probably less than five minutes" elapsed from the time he stopped Roper's vehicle to the time he formally told Roper he was under arrest. The officer did not intend to make an arrest on the initial stop. He testified that his intent in stopping Roper was simply to question him, and that if there had been no NCIC report on Roper he would have been released. The officers neither asked questions nor conducted a search before the weapon was handed to them. These factors have been considered by courts in determining that an arrest did not occur. *See, e.g., United States v. Richards,* 500 F.2d 1025, 1029 (9th Cir.1974), (length of time of detention considered), *cert. denied,* 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975); *United States v. White,* 648 F.2d 29, 34 (D.C.Cir.1981) (officers' testimony that they initially intended to question defendants, not to arrest them, considered); *United*

States v. Bull, 565 F.2d 869, 870 (4th Cir. 1977) (officer's testimony that initial contact with defendant was "stop and frisk" rather than arrest considered), *cert. denied,* 435 U.S. 946, 98 S.Ct. 1531, 55 L.Ed.2d 545 (1978); *United States v. Purry,* 545 F.2d 217, 219–20 (D.C.Cir.1976) (investigatory stop where police officer stopped suspect and asked for identification and about bank robbery); *cf. Ybarra v. Illinois,* 444 U.S. 85, 93, 100 S.Ct. 338, 343, 62 L.Ed.2d 238 (1979) (search exceeded frisk for weapons permissible during investigatory stop).

■ The district court apparently concluded that two factors made this encounter an arrest: (1) the officers' direction that the two occupants exit the vehicle, and (2) the fact that officer's weapon was drawn during the encounter. With regard to the first, there was no testimony specifying that the officers ordered the defendant to get out of the car, but in any event, it is clear that an investigative stop does not become an arrest merely because an officer directs the subject of an investigation out of a vehicle. In *Pennsylvania v. Mimms,* 434 U.S. 106, 110–11, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977), an officer directed a motorist stopped for a minor traffic violation to get out of his car, even though the officer had no reason to believe the motorist was dangerous or armed. The Court held that concern for the officer's safety outweighed the slight intrusion against the liberty of the motorist. *See United States v. White,* 648 F.2d 29, 36–40 (D.C.Cir.1981) (officer's order that motorist leave vehicle did not convert investigative stop into arrest).

Regarding the drawn gun, this Court has indicated that an officer's display of weapons does not necessarily convert an investigatory stop into an arrest. In *United States v. Maslanka,* 501 F.2d 208 (5th Cir. 1974), *cert. denied,* 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975), a narcotics agent pulled a vehicle over after a five mile high-speed pursuit, and approached it with his gun pointed at the car. Although the Court noted that the Ninth Circuit, in *United States v. Strickler,* 490 F.2d 378 (9th Cir.1974), had stated that "an armed approach to a surrounded vehicle whose occupants have been commanded to raise their hands" constituted an arrest, it held this encounter to be an investigatory stop. Noting that the agent was alone and approaching a car containing three young males, the Court stated:

> By drawing his revolver as he approached the Cadillac it may reasonably be contended he was exhibiting proper caution under the circumstances. It does not seem to us that, without regard to motive, solely because an officer draws his weapon, an investigatory stop is turned into an arrest. To require an officer to risk his life in order to make an investigatory stop would run contrary to the intent of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

501 F.2d at 213 n. 10. In *United States v. Worthington,* 544 F.2d 1275 (5th Cir.1977), DEA agents stopped an airplane believed to contain drugs. A customs plane was positioned in front of defendant's plane, and a customs officer emerged with gun and flashlight in hand. The Court, citing *Maslanka,* stated that an investigatory stop is not an arrest simply because an officer draws his gun. Because the agents reasonably feared death or serious injury approaching the plane on a dark, deserted airstrip, carrying a drawn gun was considered reasonable. 544 F.2d at 1280 n. 3.

Other courts considering this issue have held that the use of a gun does not *automatically* convert an investigatory stop into an arrest. *See, e.g., United States v. Merritt,* 695 F.2d 1263, 1272–74 (10th Cir.1982); *United States v. Harley,* 682 F.2d 398, 402 (2d Cir.1982); *United States v. Bull,* 565 F.2d 869, 870 (4th Cir.1977), *cert. denied,* 435 U.S. 946, 98 S.Ct. 1531, 55 L.Ed.2d 545 (1978); *United States v. Diggs,* 522 F.2d 1310, 1314 (D.C.Cir.1975), *cert. denied,* 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976); *United States v. Coades,* 549 F.2d 1303, 1305 (9th Cir.1977); *United States v. Richards,* 500 F.2d 1025, 1028–29 (9th Cir. 1974), *cert. denied,* 420 U.S. 924, 95 S.Ct. 1118, 43 L.Ed.2d 393 (1975). *But see United*

States v. Ceballos, 654 F.2d 177 (2d Cir. 1981); *United States v. Strickler,* 490 F.2d 378 (9th Cir.1974); *United States v. Lampkin,* 464 F.2d 1093 (3rd Cir.1972).

Roper seeks to distinguish these cases because the suspects "were either reportedly armed or sought to evade detention thus making necessary some show of force." This argument was addressed in *United States v. White,* 648 F.2d 29 (D.C.Cir.1981). In that case, two policemen received an anonymous tip that the occupants of a particular Oldsmobile were carrying drugs. They observed a car matching the description and pulled alongside it, making it difficult for the defendant to drive away. One officer drew his gun as he approached the car and ordered the defendant out of the car. When the defendant did not comply immediately, the officer repeated the order and told the defendant to place his hands on the dashboard, pointing his revolver through the windshield at the defendant. As the defendant exited the vehicle, a tinfoil the officer believed to contain narcotics fell from defendant's person, and the officer placed him under arrest. The second officer also had his gun drawn as he attempted to get a passenger out of the car. The court held that the encounter was an investigatory stop, not an arrest. Although the tip had not indicated the defendant was armed, and the defendant was not armed, the court stated:

> Though this case would be easier if it involved a dark and deserted spot or one lone officer facing a [car full] of suspects, our reluctance to second-guess the judgment of experienced officers is not limited to such extreme situations. . . . Reviewing the situation through the "eyes of a reasonable and cautious police officer on the scene, guided by his experience and training," we cannot say that the officers acted unreasonably in being prepared for possible violence. . . . [I]f the officers had sufficient cause to make a *Terry* stop . . . we cannot conclude that simply having their guns drawn and

ready would by itself convert the stop into an arrest.

648 F.2d at 36 (footnotes omitted).

■ In Roper's case, Officer Husser did not act unreasonably in drawing his gun. He was alone, approaching a vehicle with two adult males inside, one of whom was possibly a federal fugitive. *See United States v. Merritt,* 695 F.2d 1263, 1273 (10th Cir.1982) ("the better view is that the use of guns in connection with a stop is permissible where the police reasonably believe they are necessary for their protection"). We hold that the encounter in this case constituted an investigative stop.

■ ■ The next question is whether an investigative stop was justified in this case. Under *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), and *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), an investigative seizure must be reasonably related in scope to the justification for its initiation. To determine whether a stop is justified, "the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *see Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968) ("the facts [must] be judged against an objective standard: would the facts available to the officer at the moment of the seizure . . . 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?").

■ In this case, the officer relied upon information supplied in a bail bonding company flyer posted in the police station which described Roper and his automobile and stated that he was wanted for federal bail jumping. Roper first argues that such "unofficial" information cannot provide a basis for the "reasonable suspicion" necessary for an investigatory stop. A bonding company generally knows when an individual it has bonded is wanted for bail jumping. Its

 

search for fugitives, although not official, is certainly a service to the judicial system. It is reasonable for police to assist in that search. The question is not whether Roper was in fact jumping bail, but whether the flyer provided the officer with the reasonable suspicion to justify a stop. The flyer posted in the police station was a reasonable source of information for a police officer, and was sufficient to create the suspicion necessary to support an investigative stop.

Roper further argues that nothing the officer actually observed showed criminal activity. Efforts to limit investigative stops to situations where the police officer had personally observed suspicious conduct were rejected by the Supreme Court in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (information providing reasonable suspicion for stop supplied by informant's tip). While cases involving investigatory stops often involve police suspicion that an individual presently is, or is about to be, engaged in criminal conduct, the Supreme Court has stated that an officer may stop and question a person if there is reason to believe that person is wanted for past criminal conduct. *United States v. Cortez,* 449 U.S. 411, 417 n. 2, 101 S.Ct. 690, 695 n. 2, 66 L.Ed.2d 621 (1981). Although the officer here observed only "innocent" portions of the information concerning Roper, *i.e.,* his automobile description and tag number and Roper's identification, courts have upheld investigative stops of individuals based upon an officer's observation of facts corroborating only the innocent details of tips from informers. *See, e.g., United States v. Afanador,* 567 F.2d 1325, 1327–29 (5th Cir.1978) (reasonable suspicion for stop where detailed tip stated a particular individual would be carrying contraband on a particular flight, and identifying portion of that information was verified on flight's arrival). This is true even where the informers were anonymous. *See, e.g., United States v. White,* 648 F.2d 29 (D.C. Cir.1981) (anonymous tip that certain Oldsmobile was carrying contraband justified stop of automobile); *United States v. Andrews,* 600 F.2d 563 (6th Cir.) (reasonable

suspicion for investigative stop of drug suspect in airport where suspect's name, description, and flight number were verified), *cert. denied,* 444 U.S. 878, 100 S.Ct. 166, 62 L.Ed.2d 108 (1979). The officer here had more than an anonymous tip. His suspicion was based upon a bonding company's flyer, which seems comparable to a tip from an identified, reliable source. We hold that the officer's investigative stop of Roper's vehicle was supported by reasonable suspicion.

■ The arrest in this case took place when the officer formally told Roper he was under arrest. Before the arrest, Officer Husser had radioed the National Crime Information Center and learned of the Cobb County warrant for Roper's arrest for probation violation. In *United States v. McDonald,* 606 F.2d 552 (5th Cir.1979), although the officer had seen both an FBI "wanted" flyer and an NCIC printout, the Court stated that "the cases uniformly recognize that NCIC printouts are reliable enough to form the basis of the reasonable belief which is needed to establish probable cause for arrest." 606 F.2d at 554 (citations omitted). We hold that Officer Husser had probable cause to arrest Roper at the time of the arrest in this case.

REVERSED.