COURT OF APPEALS OF VIRGINIA

Present: Judges Koontz[*], Elder and Fitzpatrick
Argued at Salem, Virginia

RALEIGH MILTON DODSON

v.   Record No. 0838-94-3          MEMORANDUM OPINION BY[**]
                                   JUDGE LAWRENCE L. KOONTZ, JR.
COMMONWEALTH OF VIRGINIA               AUGUST 22, 1995

          FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                     James F. Ingram, Judge

     John H. Heard (Sinclair & Heard, on brief), for appellant.

     Marla Lynn Graff, Assistant Attorney General (James S.
     Gilmore, III, Attorney General, on brief), for appellee.


     Raleigh Milton Dodson (Dodson) appeals his bench trial

conviction for possession of cocaine with intent to distribute.

Dodson asserts that the trial court erred in finding his initial

confrontation with police was not a seizure and in finding that

the subsequent "pat down" was reasonable. Dodson further asserts

that the evidence was insufficient to support a conviction for

possession of cocaine with intent to distribute. We disagree and

affirm Dodson's conviction.

     On the evening of December 26, 1993, Danville Police

Officers Kennedy, Wallace, and Buzby were patrolling a high crime

area in response to citizen complaints of drug dealing in that

area. The officers were aware that guns had been stolen from a

---

          [*]Justice Koontz prepared and the Court adopted the opinion
in this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

          [**]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

building in that area. During their patrol, the officers observed two men standing near a street corner in a dark area. The week before, Officer Wallace and his partner had discovered a gun about a block from where these two men stood. The officers parked their vehicles and approached the two men. Officer Kennedy asked them, "What's up? How Ya'll doing? What's your names?" The two men answered. Kennedy then asked why they were standing on the corner and if they were armed. Officer Kennedy engaged the second man in conversation while Officers Wallace and Buzby spoke with Dodson.

For safety reasons, Officer Buzby stood several steps behind Dodson with a flashlight and Officer Wallace stood in front of Dodson. Officer Wallace informed Dodson of the drug and crime problems in the area, requested identification, and asked Dodson to explain his presence in the area. Dodson could not produce any identification. He said he was visiting his girlfriend. Wallace then asked whether Dodson was armed and requested permission to conduct a "pat down." Dodson refused to consent to a "pat down," stating, "I don't have anything, and so there's no need to do that." Dodson then immediately reached into the left pocket of his jogging suit. Officer Wallace testified that he thought Dodson might be reaching for a gun. Wallace told Dodson, "Don't do that. You're making me nervous. Don't do that. I'm going to pat you down, and make sure you don't have a weapon."

Officer Wallace then pulled Dodson's hand out of the pocket and began a "pat down" with Officer Buzby's assistance. Dodson

protested that he was not carrying any weapons. During the "pat down," Officer Buzby felt a hard lump in Dodson's sock. When Buzby touched the lump, Dodson jerked his leg back and took flight. The officers caught Dodson and discovered 40.1 grams of cocaine in his sock.

Dodson first contends that he was illegally seized during the initial confrontation and questioning when Officer Buzby stood behind him with a flashlight and Officer Wallace stood in front of him. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). See Florida v. Royer, 460 U.S. 491, 500 (1983); Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 647-48 (1992).

Dodson's reliance on Moss v. Commonwealth, 7 Va. App. 305, 373 S.E.2d 170 (1988), is misplaced. In that case, we held that an individual was "seized" under the Fourth Amendment and not free to leave when a police officer appeared suddenly from a hidden location and shined a flashlight into the individual's face, blinding and stunning him. Id. at 306-08, 373 S.E.2d at 171. In the present case, the officers approached Dodson from their police vehicles and initiated a consensual encounter. Furthermore, the officer used the flashlight to look over Dodson's person, not to blind or stun him.

Dodson also relies on Goodwin v. Commonwealth, 11 Va. App.

-3-

363, 398 S.E.2d 690 (1990). In Goodwin, the officer immediately informed the individual that he would be searched for weapons. Id. at 365, 398 S.E.2d at 691. Unlike the present case, there was no consensual aspect to the encounter. Id. Police officers do not "seize" an individual by simply "asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen." Florida v. Royer, 460 U.S. 491, 497 (1983); see Richards v. Commonwealth, 8 Va. App. 612, 615, 383 S.E.2d 268, 270 (1989).

Although one officer was in front and another behind Dodson, Dodson was not limited in his freedom of movement and could have terminated the encounter by stepping to the side or asking the officers to step aside. The police officers did not indicate by words or actions that Dodson was required to remain and answer questions. "Acquiescence in 'a police request, which most citizens will do, does not negate the consensual nature of the response.'" Greene v. Commonwealth, 17 Va. App. 606, 610, 440 S.E.2d 138, 140-41 (1994) (citations omitted). Considering the totality of the circumstances, a reasonable person in Dodson's situation would believe that he or she was free to walk away from the officers. Accordingly, because the initial confrontation between Dodson and the officers was consensual, we hold that Dodson was not seized at that point.

Dodson further contends that he was illegally seized when the police conducted the "pat down" search without a reasonable "articulable suspicion" of criminal activity. The dangerous

-4-

nature of police work necessitates that the police take special precautions to protect themselves and others from potentially violent situations. Terry v. Ohio, 392 U.S. 1, 24 (1968). However, law enforcement agents without probable cause to arrest may only conduct "pat downs" in those instances where they can "point to specific and articulable facts which, taken together with reasonable inferences from those facts, reasonably warrant that intrusion." Id. at 21. In determining whether there are specific and articulable facts to justify a pat down, we look at the circumstances of the encounter including the "'characteristics of the area' where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted." Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 86-87 (1987) (quoting U.S. v. Bull, 565 F.2d 869, 870-71 (4th Cir. 1977), cert. denied, 435 U.S. 946 (1978)); see Nesbit v. Commonwealth, 15 Va. App. 391, 393, 424 S.E.2d 239, 240 (1992).

Dodson was standing in a dark location in a high crime area. The police were responding to a complaint of drug dealing. In this Commonwealth "suspicion of narcotics possession and distribution is . . . recognized as a circumstance which, standing alone, gives rise to an inference of dangerousness." Williams, 4 Va. App. at 67, 354 S.E.2d at 87. Furthermore, guns had been stolen in the area a few months before the incident. Only a week earlier, Officer Wallace had discovered a gun a block away from where Dodson stood. After refusing to consent to a

"pat down" search, Dodson stated that he was not armed and immediately reached into his pocket.  Under these facts, it was reasonable for the police to be concerned for their safety.  We hold that the "pat down" search of Dodson was justified and involved no unlawful seizure.

Finally, Dodson contends that the evidence was insufficient to establish possession of cocaine with intent to distribute.  We disagree.

It is clear that "quantity, when greater than the supply ordinarily possessed by a narcotics user for his personal use, is a circumstance which, standing alone, may be sufficient to support a finding of intent to distribute."  Hunter v. Commonwealth, 213 Va. 569, 570, 193 S.E.2d 779, 780 (1973) (emphasis added); see Glenn v. Commonwealth, 10 Va. App. 150, 154-55, 390 S.E.2d 505, 508 (1990); Monroe v. Commonwealth, 4 Va. App. 154, 156, 355 S.E.2d 336, 337 (1987).  Officer Wallace testified that 0.7 grams of cocaine was a normal unit for personal consumption and would sell for about $25.  The officers found 40.1 grams of cocaine hidden in Dodson's sock.  The quantity of cocaine found on Dodson and the manner in which it was hidden are sufficient to raise a reasonable inference that his intent was to distribute the cocaine.

For these reasons, the conviction is affirmed.

Affirmed.