**Ivan Keith GRAY, et al., Plaintiffs,**

v.

**CITY OF EUFAULA, Alabama et al., Defendants.**

**Civil Action No. 97–D–413–N.**

United States District Court, M.D. Alabama, Northern Division.

Oct. 20, 1998.

disruption of workplace efficiency.

James W. Parkman, III, Dothan, AL, for Plaintiffs.

William F. Patty, Montgomery, AL, Roderick K. Nelson, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DEMENT, District Judge.

Before the court is Defendants' City of Eufaula ("Def. Eufaula") and Dalton Francis' ("Def. Francis") Motion for Summary Judgment ("Def.s' Mot."), filed on September 3, 1998. Plaintiffs filed a Response ("Pl.s' Resp.") on October 7, 1998. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the Defendants' Motion for Summary Judgment is due to be granted.

## JURISDICTION

The court properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c);

*Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

## FACTUAL BACKGROUND

At the time of the incident giving rise to the instant lawsuit, Plaintiff Ivan Gray ("Gray") was employed as a law enforcement officer for the City of Dothan Police Department. (Gray's Dep. at 6.) Plaintiff Frankie Peterman ("Peterman") was employed as a law enforcement officer for the City of Ozark on September 5, 1995, but was previously employed by Defendant Eufaula as a police officer. (Peterman's Dep. at 6, 36–37.)

On September 5, 1995, both of the Plaintiffs were off duty and were riding together in Gray's corvette in downtown Eufaula. (Gray's Dep. at 76; Peterman's Dep. at 64.) Peterman spotted Defendant Francis, who was employed by Defendant Eufaula as a police officer and on duty at the time of the incident. (Gray's Dep. at 76; Peterman's Dep. at 65.) Francis was talking with a woman named Julie Parr, now known as Julie Harrison Wallace ("Ms.Wallace"). (*Id.;* Def.s' Mot. at 2.)

According to the Plaintiffs, Peterman recognized Francis, as they previously had worked together as officers for the City of Eufaula. (Peterman's Dep. at 65.) From approximately ten to fifteen feet away, Peterman waved at Francis and yelled out the window of the corvette, "Hey copper, Hey copper."[1] Plaintiffs' proceeding driving away from Defendant Francis after they yelled.

Francis excused himself from Ms. Wallace, proceeded to his patrol car, radioed in a request for backup, and pursued the Plaintiffs. (Francis' Dep. at 52.) Francis had not recognized Peterman (Gray's Dep. at 77; Francis' Dep. at 53), and thus, he turned on his blue lights and motioned for the Plaintiffs to pull their car over to the side of the road. (Gray's Dep. at 77; Peterman's Dep. at 65.) Plaintiffs did not immediately stop their vehicle because they were surprised that Francis was motioning to them. (*Id.*) Thus, Francis again motioned for the Plaintiffs to pull over. (*Id.*) Gray made a right turn and stopped his vehicle. (*Id.*)

After making the stop, Francis ordered the Plaintiffs to put their hands out of the car. (*Id.*) Instead of complying with Francis' request, Gray asked Peterman if Francis was kidding. (Grey's Dep. at 77.) Francis again ordered the Plaintiffs to put their hands out of the car. (*Id.*) The Plaintiffs complied with this request and Francis "grabbed [Gray's] left wrist and twisted it backwards and started pulling [his] arm back to the back of the car, where the pit of [his] arm hit the back of [the] body of [the] car." (Gray's Dep. at 78.)

Gray identified himself as a police officer and asked Francis why he was being stopped. (*Id.*) Francis replied to Gray that he was being stopped for disorderly conduct and then ordered Gray to step out of the car. (*Id.;* Francis' Dep. at 61, 64–65.) Gray complied with Francis' command and Francis kept Gray's arm twisted behind his back. (Gray's Dep. at 78; Peterman's Dep. at 67.)

Next, Francis ordered Peterman to get out of the car and Peterman complied. (*Id.*) Peterman said "Francis, what is the problem?" and Francis let go of Gray's arm and walked over to Peterman. (Peterman's Dep. at 67.) Francis then grabbed Peterman by his left arm, twisted it, put it behind his back, and shoved him up against the car. (*Id.*) About this time, two or three patrol cars arrived, and the incoming officers got out of their cars smiling because they recognized Peterman. (*Id.*) Their arrival caused Francis to look at Peterman closely and then release Peterman's arm because he finally recognized him. (*Id.*) All parties left the scene later and went their separate ways, including Gray, Peterman, and Francis. (Francis' Dep. at 76.) The entire sequence of events occurred in a very compressed time frame, which was approximately five minutes. (Francis' Dep. at 72; Def.s' Ex. 6 at 3.)[2]

---

1. The exact words that Plaintiff Peterman yelled are disputed by the Parties. Defendant Francis believed that Plaintiff Peterman yelled "I'm going to get you copper," and also perceived that the words were uttered in a threatening manner. (Def. Francis' Dep. at 52.) Ms. Wallace stated that Plaintiff Peterman used profanity that included the word "goddamn." (Def.s' Ex. 6 at 1.)

2. The court notes that although the Plaintiffs have had ample opportunity to contest the appli-

Francis never arrested Gray or Peterman or filed any charges against them. (Gray's Dep. at 110.) Francis never handcuffed either Plaintiff or stated that they were under arrest. (*Id.* at 116; Francis' Dep. at 116.) Francis never drew his gun or baton. (Francis' Dep. at 64.)

Gray stated that he suffered pain from the incident, but the pain subsided and he has no permanent physical injury. (Gray's Dep. at 101.) Furthermore, Gray has not received any medical treatment. (*Id.*) Peterman stated that he has pain in his left shoulder due to the incident, but he has never sought medical treatment nor missed any work due to the injury. (Peterman's Dep. at 117.) Peterman has also worked out with weights since the incident. (*Id.* at 118.)

On March 24, 1997, Plaintiffs filed a two count Complaint against the City of Eufaula and against Officer Francis in both his individual and official capacity. Count I of the complaint is brought pursuant to 42 U.S.C. § 1983 and alleges that the Plaintiffs were falsely arrested in violation of the Fourth and Fourteenth Amendments. In Count II, Plaintiffs allege an assault and battery claim in violation of 42 U.S.C. § 1985.[3] Defendants have filed a Motion for Summary Judgment[4] and request that the court dismiss both counts of Plaintiffs' Complaint. The court will separately address the Defendants' arguments for each of Plaintiffs' claims.

## DISCUSSION

*Plaintiffs' Section 1983 Claim Against Defendant Francis in His Individual Capacity*

Section 1983 of Title 42 of the United States Code creates a private right of action for damages and injunctive relief against individuals and governmental bodies whose conduct under the color of state or local law deprives a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. 42 U.S.C. § 1983. In Count I of their complaint, Plaintiffs allege that they are entitled to recovery under 42 U.S.C. § 1983 against Defendant Francis in his individual capacity because he allegedly deprived them of their constitutional rights. Specifically, Plaintiffs argue that Defendant Francis violated the tenets of the Fourth and Fourteenth Amendments by falsely arresting them.

It is undisputed that a warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a Section 1983 claim. *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir.1990). An arrest made with probable cause, however, constitutes an absolute bar to a Section 1983 action for false arrest. *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir.1996). The standard for determining whether an officer had arguable probable cause, is "whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of the well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir.1997). Probable cause does not require overwhelmingly convincing evidence, but only "reasonably trustworthy information." *Marx*, 905 F.2d at 1506 (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

Defendant Francis argues that no arrest, as contemplated by the Fourth Amendment, was ever effectuated. Instead, Defendant Francis argues that the facts indicate that an "investigatory stop" as contemplated by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), was conducted. In the alternative, should the court find that an

---

cable time frame offered by the Defendants, they have failed to offer any evidence or make any factual assertion whatsoever that contradicts the Defendants version. Accordingly, the court finds that the Parties have not disputed this highly relevant issue.

3. The court notes that the Defendants, in their Motion for Summary Judgment, have completely overlooked the basis of Plaintiffs' assault and battery claim. Apparently, they assumed that the

claim was brought pursuant to 42 U.S.C. § 1983 and they construed it as an excessive force claim. However, the court finds that the Plaintiffs' have very clearly stated that the source of their assault and battery claim is Section 1985.

4. The court also notes that the only dispositive motion filed in this case is the present Motion for Summary Judgment. Defendants have not previously filed a Motion to Dismiss.

arrest occurred, Defendant Francis argues that he is entitled to qualified immunity.

In response, Plaintiffs argue that Defendant Francis did not have probable cause to arrest them for disorderly conduct.[5] (Pl.'s Resp. at 3.) They further argue that Defendant Francis is not entitled to qualified immunity because he violated clearly established constitutional rights of which he should have known. (*Id.*)

■ The court finds that it must first decide whether the Plaintiffs were arrested, as contemplated by the Fourth Amendment, before it determines whether they were falsely arrested in violation of 42 U.S.C. § 1983. Traditionally, the definition of an arrest was "the deprivation of a person's liberty by legal authority," and for many years, courts interpreted such a definition to mean that the mere stopping of a vehicle without probable cause constituted an illegal arrest. Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure* § 3.5 (2nd ed.1992). However, after the Supreme Court's ruling in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, it is clear that not every stop made by an officer amounts to an arrest or requires probable cause. *Id; Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

■ Instead, courts now ordinarily hold that a traffic stop is a limited seizure within the meaning of the Fourth and Fourteenth Amendment and is subject, therefore, to the less rigorous requirements of *Terry*, rather than the more stringent constitutional requirements of a custodial arrest. *See e.g., Deleware v. Prouse*, 440 U.S. 648, 652, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *see also Courson v. McMillian*, 939 F.2d 1479, 1489 (11th Cir.1991); *United States v. Roper*, 702 F.2d 984, 985 (11th Cir.1983).

■ However, it is also true that an investigatory stop may be converted into an arrest. *U.S. v. Roper*, 702 F.2d 984, 985 (11th Cir.1983). No bright line test separates an investigatory stop from an arrest. *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir.1995). Instead, the character of the seizure depends on the nature and degree of the intrusion under the totality of the circumstances. *Roper*, 702 F.2d at 985. The Eleventh Circuit has also emphasized that "[t]he facts are important." *Id.*

■ Arguably, Plaintiffs' characterize Defendant Francis' detention of them as an arrest because he ordered them out of the car, he held their arms behind their back, and then he pushed them up against the car. However, the court finds that Defendant Francis' actions were not sufficient to convert this Terry Stop into an arrest.

■ It is clear that an investigative stop does not become an arrest merely because an officer directs the subject of an investigation out of a vehicle. *See Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (holding that an officer making a traffic stop may also order passengers to get out of the car pending completion of the stop); *Pennsylvania v. Mimms*, 434 U.S. 106, 110–11, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (stating that officer who directed a motorist stopped for a minor traffic violation to get out of his car, even though the officer had no reason to believe the motorist was dangerous or armed, did not violate the Fourth Amendment because the concern for the officer's safety outweighed the slight intrusion against the liberty of the motorist); *Roper*, 702 F.2d at 987 (holding that officer who drew his pistol and directed two passengers to exit vehicle only seized the defendants but did not arrest them).

Furthermore, the court finds persuasive Defendant Francis' testimony that his actions were motivated by concern for his safety. (Francis' Dep. at 65–66.) Plaintiffs' admitted that they did not immediately stop their car when Defendant Francis turned on his blue lights. (Gray's Dep. at 77; Peterman's Dep.

---

5. The court notes that Plaintiffs have failed to address the issue of whether Defendant Francis' conduct amounted to an arrest. Instead, the Plaintiffs have limited their argument solely to the issue of whether Defendant Francis is entitled to qualified immunity and whether he had probable cause to make an arrest. However, the court finds that the initial determination must be whether Defendant Francis' conduct amounted to an arrest, as contemplated by the Fourth Amendment.

at 66.) Plaintiffs' further admitted that they did not immediately put their hands out of the vehicle as ordered by Defendant Francis because they thought Defendant Francis was "kidding." (Gray's Dep. at 77.) However, when the Plaintiffs' saw the blue light in their mirror and realized that Defendant Francis had not recognized them, they should have promptly complied with his requests until such time as they could inform them that they were police officers. The court finds that Defendant Francis' actions did not convert this investigative stop into an arrest because he was justifiably concerned with his safety and the Plaintiffs appeared to be resisting arrest. *See United States v. Kapperman*, 764 F.2d 786, 790 n. 4 (11th Cir.1985) (stating that "the use of a particular method to restrain a person's freedom of movement does not necessarily make police action tantamount to an arrest," and that "[p]olice may take reasonable action, based upon the circumstances, to protect themselves ... or to maintain the status quo").

Other circumstances that have been held to indicate an arrest include: the blocking of an individual's path or the impeding of his progress; the display of weapons; the number of officers present and their demeanor; the length of the detention; and the extent to which the officers physically restrained the individual. *See United States v. Hammock*, 860 F.2d 390, 393 (11th Cir.1988).

In applying the above list of factors, the court finds persuasive the fact that Defendant Francis neither drew his pistol or baton, nor handcuffed either Plaintiff. (Peterman's Dep. at 110; Francis' Dep. at 64.) Furthermore, Defendant Francis did not state that either Plaintiff was under arrest nor did he book them. (Peterman's Dep. at 116; Francis' Dep. at 116.) *See Courson*, 939 F.2d at 1492 (stating that "this circuit has recognized that an officer's not taking the detained individual to a station or office, [or] not conducting a full search of the person ... indicate an investigatory stop rather than an arrest") (internal citations omitted).

Additionally, the court also finds persuasive the short duration of the investigative stop. Defendants have testified, and Plaintiffs have not disputed, that the length of the detention, until the back-up officers arrived, was approximately five minutes. (Def.s' Ex. 6 at 3.) Although the Supreme Court has specifically rejected a permissible time limitation for a Terry stop, *United States v. Place*, 462 U.S. 696, 709 n. 10, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Court has upheld much longer detentions than the one at issue here. *See United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (finding that a twenty minute investigatory stop prior to the defendant's arrest was not unreasonable when most of the detention time was spent contacting and awaiting assistance from local police); *see also Courson*, 939 F.2d 1479, 1492 (11th Cir.1991) (finding a detention of approximately thirty minutes to be an investigatory stop and not an arrest); *United States v. Hardy*, 855 F.2d 753, 761 (11th Cir.1988) (finding that a fifty minute investigatory stop was a Terry investigative detention); *United States v. Willis*, 759 F.2d 1486, 1497 (11th Cir.1985) (finding a twenty-five minute investigatory detention to be reasonable under the circumstances and not an arrest).

Based on the foregoing, the court finds that Defendant Francis' detention of the Plaintiffs did not amount to an arrest, but rather, was a limited Terry investigative stop. Because the court has determined that the detention of the Plaintiffs was a Terry stop rather than arrest, the court need not address Plaintiffs' argument that the stop was improper because it was not supported by probable cause. Furthermore, because the court has concluded that the brief detention of the Plaintiffs' did not amount to an arrest, the court also finds that Plaintiffs' claim for false arrest under 42 U.S.C. § 1983 must be dismissed. Thus, the court finds that Defendant Francis' Motion for Summary Judgment on Plaintiffs' false arrest claim is due to be granted.

*Plaintiffs' Section 1983 Claim Against the City of Eufaula and Defendant Francis in His Official Capacity*

Defendants urge the court to dismiss the Section 1983 claims against the Defendants because the "Plaintiff's Complaint contains no allegations which may arguably form the basis of liability on the part of the City" and

"allegations against a municipal police officer in his official capacity are, in essence, allegations against the municipality itself." (Def.s' Mot. at 3.) The court notes that the Plaintiffs' Response only addressed issues of qualified immunity, and thus, the Plaintiffs have failed to offer any rebuttal to the Defendants' arguments on this issue.

 At the outset, the court notes that Plaintiffs' Complaint against both the City of Eufaula and Defendant Francis in his official capacity is redundant. When an officer is sued under Section 1983 in his official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991). Thus, the court hereby dismisses Plaintiff's claim against Defendant Francis in his official capacity, as Plaintiffs have also brought a claim against the City of Eufaula. *See Busby,* 931 F.2d at 776 (affirming district court's dismissal of the Plaintiff's claims against the Defendants in their official capacity because to keep both the City and the officers would have been redundant and possibly confusing to the jury).

 Furthermore, the court finds that Plaintiffs' claim against the City of Eufaula also is due to be dismissed because Plaintiffs have failed to prove an accepted theory upon which the city may be held liable under Section 1983. It has been clearly established that a Plaintiff may not rely upon a respondeat superior theory to hold a municipality liable under Section 1983. *See Oklahoma v. City of Tuttle,* 471 U.S. 808, 817–818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (stating that although local bodies such as counties and municipalities are persons within the meaning of Section 1983 and can be liable for deprivations of federally protected rights, it is not a respondeat superior theory on which liability rests). "A municipality cannot be held liable solely because it employs a tortfeasor." *Monell v. Department of Social Services of New York,* 436 U.S. at 691, 98 S.Ct. 2018.

 Instead, in order to recover against a municipality, the Plaintiff must establish that the alleged conduct occurred pursuant to a custom or policy of the municipality. *Id.* at 694, 98 S.Ct. 2018.

> Local governments are directly liable under § 1983 ... for constitutional deprivations resulting from (1)an unconstitutional action taken pursuant to an officially promulgated policy statement, decision, regulation or ordinance; or (2) governmental custom, even though not authorized by written law.

*Martinez v. City of Opa–Locka, Fla.,* 971 F.2d 708, 713 (11th Cir.1992) (citations omitted). In other words, to hold the governmental entity liable for the alleged constitutional deprivations by its employees, Plaintiffs must establish that an official policy or custom of the governmental entity was the moving force behind the deprivations. *See Id.,* (citing *Farred v. Hicks,* 915 F.2d 1530, 1532–33 (11th Cir.1990)).

 There are two generally accepted methods of proving, in an excessive force suit, that a government's policy or custom caused a Plaintiff's injury. The first is by showing that the government's failure to train its officers amounts to a deliberate indifference to the rights of persons with whom the officers come into contact. *See City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The second method of holding a governmental entity liable is by showing that a government has demonstrated a "persistent failure to take disciplinary action against officers." *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1443 (11th Cir.1985) (stating that a "persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a 'custom' within the meaning of *Monell* "); *see also McConney v. Houston,* 863 F.2d 1180, 1184 (5th Cir.1989). In *McConney,* the Fifth Circuit also explained that "[i]solated incidents ... are inadequate to prove knowledge and acquiescence by policymakers." 863 F.2d at 1184

(cited with approval in *Loggins v. Jeans*, 841 F.Supp. 1174, 1177 (N.D.Ga.1993)).

■ The court notes that Plaintiffs' have attempted to utilize the second method discussed above. In the Plaintiffs' Response, they argue that because the "constitutional violations by Defendant Francis are so blatant, one could conclude that the local government should also be held responsible as an implied policy or custom." (Pl.s' Resp. at 6.) Specifically, Plaintiffs' argue that the "acts of the Defendant City suggest approval and condonation of its' agents and employees." (*Id.*) In support of their claim, Plaintiffs cite their individual depositions in which they testified that they filed a written complaint with Captain Bradshaw, an officer employed by the Eufaula Police Department, and they never heard back from Captain Bradshaw. (Gray's Dep. at 103–108; Peterman's Dep. at 110–115).

The court finds that the isolated actions of Captain Bradshaw in not returning Plaintiffs' call or in not investigating Plaintiffs' complaint are insufficient to establish liability. To establish a policy or custom sufficient to hold the City liable under § 1983, it is necessary to show a persistent and widespread practice. *See Fundiller*, 777 F.2d 1436, 1442 (stating that the term "custom," as defined by the Supreme Court includes "persistent and wide-spread ... practices," "permanent and well settled practices," and "deeply embedded traditional ways of carrying out policy") (citations omitted). Normally, random acts or isolated incidents are insufficient to establish a custom or policy. *See Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir.1986). "In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991). Proof of a single incident of unconstitutional activity is not sufficient to impose liability. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion).

The court finds that Plaintiffs have failed to prove a persistent failure on the part of the City of Eufaula to take disciplinary action against its officers. Even if Captain Bradshaw failed to investigate Defendant Francis after receiving Plaintiffs' complaint, that action alone is not sufficient to establish a "persistent failure to take disciplinary action." Because the Plaintiffs' have failed to offer any evidence of other similar incidents, the court finds that Plaintiffs' have failed to create a genuine issue for trial that a policy or custom of the City of Eufaula caused their injuries. Thus, the court finds that the claims against the City of Eufaula are due to be dismissed. *See Loggins*, 841 F.Supp. at 1174 (granting motion for summary judgment in favor of defendants because plaintiff failed to establish that any official policy or custom caused alleged constitutional violations).

*Plaintiffs' Section 1985 Claim*

Defendants also urge the court to grant summary judgment in their favor on Plaintiffs' assault and battery claim that they brought pursuant to 42 U.S.C. § 1985. The court notes that Plaintiffs have failed to indicate the provision of Section 1985 under which they bring their claim. The court finds the applicable provision to be Section 1985(3).

■ In order to recover under 42 U.S.C. § 1985(3), the Plaintiffs must allege and prove (1) a conspiracy; (2) for the purpose of depriving, directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; (3) an overt act in furtherance of the object of the conspiracy; and (4) that the plaintiffs (a) were injured in their person or property, or (b) was deprived of having and exercising any right or privilege of a United States citizen. *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

■ Section 1985 does not grant a cause of action for every conspiratorial tort or for every wrong committed by common plan or design. *See Id.* It grants a federal cause of action only for conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

■ The Supreme Court has emphatically stated that Section 1985 was not intended to punish every assault and battery committed by two or more persons within a state. *Griffin,* 403 U.S. at 101–02, 91 S.Ct. 1790. Rather, only conduct that is motivated by racial or class-based invidiously discriminatory animus gives rise to a civil rights claim under Section 1985(3). *Id.; Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir.1979).[6]

■ The court finds that Plaintiffs claim under Section 1985(3) must fail for lack of a conspiracy. It is elementary that a conspiracy requires the collaboration of two or more people. *United States v. Toler,* 144 F.3d 1423, 1425 (11th Cir.1998) (stating that an element of a conspiracy is an agreement between two or more persons). Section 1985(3) specifically states that to assert a cause of action **"two or more persons** in any State ... [must] conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving ... any person or persons of the equal protection of the laws...." 42 U.S.C. § 1985(3) (emphasis added).

However, Plaintiffs have failed to produce any evidence tending to show that Defendant Francis conspired with any other officer to deprive Plaintiffs' of their equal protection rights. Plaintiffs' have admitted that Defendant Francis was on patrol by himself on the afternoon of September 5, 1998. In fact, he radioed in to the station for assistance after his initial encounter with the Plaintiffs' during which they drove by in the Corvette. Furthermore, Plaintiffs have not alleged that any other back-up officers who arrived were involved in Defendant Francis' alleged conspiracy.[7] In fact, according to the Plaintiffs'

testimony, the officers who arrived to assist Defendant Francis "got out [of their patrol car] smiling because they recognized who I was." (Peterman's Dep. at 68.) Their arrival caused Defendant Francis to recognize Plaintiff Peterman and everyone eventually got in their respective cars and went home. Accordingly, the court finds that there is no evidence of concerted action, nor are there any facts from which a conspiracy can be inferred. *See Byrd v. Clark,* 783 F.2d 1002, 1008 (11th Cir.1986) (dismissing Plaintiff's Section 1985(3) claim because there was no evidence of a conspiracy). Therefore, the court finds that Defendants' Motion for Summary Judgment is due to be granted as Plaintiffs' have failed to offer any evidence tending to show a conspiracy to deprive Plaintiffs' of their rights under Section 1985.

## ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motion for Summary Judgment be and the same is hereby GRANTED. There being no issues remaining for this court's resolution, this action be and the same is hereby DISMISSED, each Party to bear his or its own costs.

---

**6.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

**7.** Plaintiffs' also make the conclusory allegation that "based on the clear unlawful conduct and reaction of Defendant Francis ... the plaintiffs contend that it is obvious that Defendant Francis was improperly motivated by racial discrimination." (Pl.'s Resp. at 6). However, after reviewing the minuscule evidence offered by the Plaintiffs, the court finds that Plaintiffs have failed to

prove that the actions taken against them were because of class-based, racial animus. The Plaintiffs' cite to Defendant Francis' statement that when the corvette was driving away, he could see that the passenger in the car was black. (Francis' Dep. at 53.) However, the Eleventh Circuit has held that the mere fact that an officer may have acted knowing of Plaintiffs' race does not alone suffice to prove racial bias. *See Byrd,* 783 F.2d at 1008. Accordingly, the court finds that Plaintiffs' have failed to adduce evidence sufficient to establish the requisite intent necessary to state a claim under 42 U.S.C. § 1985.